THOMAS T. MARTIN, PLAINTIFF-APPELLANT, v. BOROUGH OF COLLINGSWOOD, DEFENDANT-RESPONDENT.

Argued December 4, 1961—Decided February 5, 1962.

*Mr. Albert G. Driver* argued the cause for appellant.

*Mr. M. F. Van Istendal, Jr.,* argued the cause for respondent.

The opinion of the court was delivered by

WEINTRAUB, C. J.  The Camden County Park Commission "leased" to appellant Martin a portion of its property for the operation of a "milk bar." For the years 1957 through 1959 the land and building thus used were assessed for local taxation against Martin under *N. J. S. A.* 54:4–2.3. The Division of Tax Appeals sustained the assessments and we certified Martin's appeal before the Appellate Division considered it.

The "lease" was doubtless made pursuant to *N. J. S. A.* 40:37–201.1 under which the park commission "may provide and operate, or arrange for the operation of, such facilities for the use and enjoyment of its parks by the public as it may deem to be necessary and expedient"; and may authorize "licenses, privileges or franchises to individuals or corporations for the operation for private profit of any facility, utility or device within the park," subject to public bidding upon advertisement with respect to "franchises." The agreement with Martin recites compliance with the bidding provisions and evidences a purpose to accomplish the commission's public function by way of that agreement. Whether the transaction constitutes a "lease" in a technical sense or within the meaning of the statute under which the assessments were made, need not be decided.

*N. J. S. A.* 54:4–2.3, under which the assessments were made, reads:

> "When real estate exempt from taxation is leased to another whose property is not exempt, and the leasing of which does not make the real estate taxable, the leasehold estate and the appurtenances shall be listed as the property of the lessee thereof, or his assignee, and assessed as real estate."

*N. J. S. A.* 54:4–2.8 provides the taxes so levied "shall * * * be a lien upon said leasehold estate and the lessee, or his assignee, shall be personally liable therefor."

The specific issue tendered the Division and also on this appeal is whether the assessments should be limited to the value of the "leasehold" interest. It is agreed the assessor made no effort to value Martin's interest in the realty, but rather used the value of the fee. Martin asked that the assessments be reduced to zero.

The question we find to be dispositive was at best obliquely suggested, but nonetheless, for the reasons stated in *Howard D. Johnson Co. v. Township of Wall*, 36 *N. J.* 443, decided this day, we will consider it.

In his analysis Martin approached the issue upon the two conceivable hypotheses which the case will permit. The first is that the "lease" was for a *private* purpose. The second is that the "lease" was made to further a *public* purpose the commission was authorized by statute to achieve either by direct operation of the facility or by an arrangement with a private operator.

Upon the premise that the "lease" was for a private use, Martin contends the statute would not authorize taxation. The statute reaches a lease transaction only if "the leasing * * * does not make the real estate taxable." Under the doctrine of *Jamouneau v. Division of Tax Appeals*, 2 *N. J.* 325 (1949), the statutory exemption given the park commission by *N. J. S. A.* 54:4–3.3 would fall if the property were used for a private purpose rather than the public purpose for which the exemption was intended.

See also *New Jersey Turnpike Authority v. Township of Washington*, 16 *N. J.* 38 (1954); *Township of Teaneck v. Division of Tax Appeals*, 10 *N. J. Super.* 171 (*App. Div.* 1950). Martin accordingly urged, and we think correctly, that if the transaction thus made the property taxable to the park commission under the doctrine just stated, as it would if the use were private, it follows there was no warrant for a further assessment against a "lessee." Surely the Legislature did not intend multiple taxation.

The alternate hypothesis is that the "lease" was made by the commission to further the public purpose the Legislature assigned to the commission. We have already cited the statute which authorized the commission to contract to that end. We add that in *Hill v. Borough of Collingswood*, 9 *N. J.* 369 (1952), which apparently dealt with the same facility here involved, it was held that the commission was authorized to make a "lease" such as the one before us; that the facility nonetheless remained in the public use; and that the tenant's operation of it was not subject to local ordinances. We note that in the present case the parties did not explore factually whether the operation was thus for the public purpose, and the Division made no finding with respect to it. At any rate, the hypothesis we are now pursuing is that the public purpose was thus furthered.

Upon that hypothesis Martin argued the Legislature could not have intended, by the tax statute here invoked, to reach the property interest of the commission and hence must have intended a tax against the lessee measured solely by the value of the leasehold estate.

We are inclined to believe the Legislature intended assessment under the statute should be upon a valuation of the realty as such. *Ad valorem* taxation is simply a technique to apportion the current cost of government among those who benefit from it in their current enjoyment of property. The correlation between burden and benefit is inevitably a rough one, and accordingly it is of no moment

that a particular user does not need or cannot enjoy some of the services of government. Over all, there is no real connection between the benefits thus conferred and the nature of the possessor's underlying interest in the freehold, *i. e.,* whether it be in fee, or for life, or an estate for one year or for many years. Thus viewed, the *quantum* of the possessor's property interest is quite irrelevant. See *United States v. City of Detroit,* 355 *U. S.* 466, 2 *L. Ed. 2d* 424 (1958). But whether the statute directs valuation of the realty rather than of the leasehold, we need not finally decide, for we are satisfied the statute does not apply for the reason that the Legislature intended that the use of the property for the public purpose shall not be burdened with taxation. Thus the error we find in Martin's argument is the assumption he makes, contrary to his own interest, that the Legislature intended a tax when the property is devoted by a "lease" arrangement to the public use which the Legislature intended and authorized to be provided in that way.

Upon the hypothesis we are now pursuing, the case comes within *Walter Reade, Inc. v. Township of Dennis,* 36 *N. J.* 435, this day decided. Here, as there, the public agency was empowered to furnish the public use either directly or through an arrangement with a private operator. As we there said, it would be odd to authorize the agency to choose between these methods and then encumber the choice with tax consequences which, realistically, must ultimately be assumed by the agency in the fixing of "rentals."

The municipality stresses the "profit" aspect. The park commission of course is not a profit-making organization. That it may operate a particular facility for a profit does not make the total park operation a business venture. The Legislature did not command that incidental facilities be operated on a break-even or loss basis. On the contrary, the Legislature intended the commission to grant a "franchise" for the best return which competitive bidding would yield. We do not know whether the "lease" did yield a

"profit" to the commission. It may be doubted that, after all appropriate charges, a net income resulted, but if it did, the fact probably remained that the total park operations resulted in deficits which the taxpayers of the county annually assumed. At any rate, we find no legislative intimation that the exemption accorded the commission should depend upon the fruitfulness of competitive bidding. We think it dispositive, upon the hypothesis stated above, that the commission here furnished the public use by a method the Legislature authorized.

Hence, upon both possible approaches we have explored, *N. J. S. A.* 54:4–2.3 does not apply.

It follows that the judgments must be reversed, with directions to vacate the assessments. No costs.

*For reversal*—Chief Justice WEINTRAUB, and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN—7.

*For affirmance*—None.