TODD SHIPYARDS CORPORATION, PETITIONER-APPEL-LANT, v. TOWNSHIP OF WEEHAWKEN, RESPONDENT-RESPONDENT.

TODD SHIPYARDS CORPORATION, PETITIONER-APPEL-LANT, v. CITY OF HOBOKEN, RESPONDENT-RESPON-DENT.

Argued May 3, 1965—Decided July 6, 1965.

Mr. *Joseph A. Davis* argued the cause for appellant (*Messrs. O'Mara, Schumann, Davis & Lynch,* attorneys).

Mr. *Leon S. Milmed* argued the cause for respondent Township of Weehawken.

Mr. *Herbert H. Fine* argued the cause for respondent City of Hoboken.

Mr. *Alan B. Handler,* First Assistant Attorney General, argued the cause for Division of Tax Appeals (*Mr. Arthur J. Sills,* Attorney General of New Jersey, attorney).

The opinion of the court was delivered by

WEINTRAUB, C. J. These cases involve municipal taxes levied upon leasehold interests of Todd Shipyards Corporation (herein Todd) in real property owned by the United States of America. The assessments were sustained by the Division of Tax Appeals and we certified the appeals before the Appellate Division acted upon them.

The demised premises are used by Todd in its business of ship repair. Todd's operations are concededly private; government work is only a minor part of total work done. The assessments were made under the Leasehold Taxing Act, *L.* 1949, *c.* 177; *N. J. S. A.* 54:4–2.3 *et seq.,* and the sole issue is whether that statute unconstitutionally discriminates against the federal government. The statute was held invalid on that account in *Thiokol Chemical Corp. v. Morris County Board of Taxation,* 76 *N. J. Super.* 232 (*Law Div.* 1962),

but on appeal we did not reach the constitutional question since we found a leasehold was not involved and hence the statute did not apply. 41 *N. J.* 405 (1964). In the case now before us, Todd holds a lease within the ambit of the statute and accordingly the constitutional issue must be met.

*Section* 1 (*N. J. S. A.* 54:4–2.3) provides:

> "When real estate exempt from taxation is leased to another whose property is not exempt, and the leasing of which does not make the real estate taxable, the leasehold estate and the appurtenances shall be listed as the property of the lessee thereof, or his assignee, and assessed as real estate."

The statute does not create a lien on the property interest of the owner, but rather the lien is upon the leasehold estate and the lessee or his assignee is personally liable for the tax. *Section* 6 (*N. J. S. A.* 54:4–2.8).

██ Although property of the United States may not be taxed by the State or its political subdivisions, it is settled that, absent some other expression by the Congress, the interest of private parties in such property may be taxed. This rule rests upon the proposition that private interests which benefit from local government should contribute fairly to its costs and ought not to have the competitive advantage a tax immunity would give. *United States v. City of Detroit,* 355 *U. S.* 466, 473–474, 78 *S. Ct.* 474, 2 *L. Ed. 2d* 424, 429 (1958). Although the impact of a tax may be felt indirectly by the federal treasury in terms of lesser rentals or increased costs, the rule results in a reasonable adjustment between federal taxpayers and local taxpayers, an adjustment especially required by the range and tempo of federal activity. The limitation upon this power to tax is that there may be no discrimination against the federal government or those with whom it deals. *Moses Lake Homes, Inc. v. Grant County,* 365 *U. S.* 744, 81 *S. Ct.* 870, 6 *L. Ed. 2d* 66 (1961) ; *Phillips Chemical Co. v. Dumas Independent School District,* 361 *U. S.* 376, 80 *S. Ct.* 474, 4 *L. Ed. 2d* 384 (1960) ; *United States v. City of Detroit, supra* (355 *U. S.* 466, 78 *S. Ct.* 474,

2 *L. Ed. 2d* 424); *United States v. Township of Muskegon,* 355 *U. S.* 484, 78 *S. Ct.* 483, 2 *L. Ed. 2d* 436 (1958); *City of Detroit v. Murray Corp.,* 355 *U. S.* 489, 78 *S. Ct.* 458, 2 *L. Ed. 2d* 441 (1958).

Todd asserts an invidious purpose to discriminate against the United States is revealed in the statement annexed to the bill which became the statute in question. The statement reads:

"The purpose of this bill is to permit municipalities to levy and assess taxes on exempt property when the same is leased for private use. In many municipalities the Federal Government leases its exempt property to business and industry while the same remains exempt from taxation.

The first section of this bill is taken from the Illinois Annotated Statutes (Chapter 120, Section 507). It has been upheld by the courts of Illinois.

Many other States tax the leasehold estate in lands leased from the United States as the personal property of the lessee. To tax the leasehold estate as real estate avoids the complications inherent in appraising the value of the lease as personal property. A statute is needed for that purpose. A tax on leasehold estates in property owned by the United States is not considered as a tax on the United States (see 23 *A. L. R.*, page 248)."

██ Todd stresses the reference to federally owned property. No doubt the opportunity to call upon private users of such property to share in the cost of local government provided a specific motivation for the law. But the State was free to close a gap in its tax statutes; it could end the preferential exemption of those who devoted federal property to private gain. The legislative statement reveals no purpose to disadvantage the federal government and those with whom it deals. In any event the statement would not restrain the terms of the enactment, *Newark v. Fischer,* 8 *N. J.* 191, 196–197 (1951); *Flagg v. Johansen,* 124 *N. J. L.* 456 (*Sup. Ct.* 1940), and hence we must look to the statute itself to see if the forbidden discrimination appears.

In reading the statute, we should keep in mind the purpose of the Legislature, stated in the first sentence of the statement, to reach exempt property "when the same is leased for

private use." Appreciating that a lease of exempt property for private use would in some cases itself destroy the exemption and lead to taxation under the general tax statutes, the draftsman excluded all such cases and sought to reach only such leases for private use as would not end the exemption under existing law. Accordingly *section* 1 expressly excludes leases which operate to subject exempt real property to taxation under existing law, and provides for taxation under its own provisions of the leasehold estate in all other cases.

Thus all exempt property leased for private purposes is subject to taxation under one law or another. This is the evident effect of *section* 1. On its face there is no room for a claim of discrimination against the United States. If such discrimination is possible, it can only be by virtue of some other provision of statutory or decisional law or of the Leasehold Taxing Act itself. The suggested possibilities are two : the traditional immunity of the State itself, and the provisions of *section* 10 of the act. We see no basis in either for the charge.

 *N. J. S. A.* 54:4–3.3 exempts the property of the State "[e]xcept as otherwise provided by article 1 of this chapter." The Leasehold Taxing Act is part of that article. It is of course elementary that a statute will not be lightly found to derogate from the prerogatives of the State. See *Delaware River and Bay Auth. v. International Organization of Masters, Mates and Pilots,* 45 *N. J.* 138 (1965). Still, whether the State intends its lessee to be subject to local taxation remains a matter of intention and nothing more. *State, Morris Canal and Banking Co., Pros. v. Haight, Collector,* 36 *N. J. L.* 471 (*E. & A.* 1873). Here, in seeking that intention, we must bear in mind that the issue ultimately is whether a statute must fall. We should not defeat the expressed legislative will by assuming the Legislature intended an unexpressed reservation which would nullify it. Rather, if the purpose to tax property of the United States under lease for private use cannot be achieved while State property so leased is exempt, we should assume the Legislature intended the statute to reach wherever constitutionally it must. *Cf.*

*Two Guys from Harrison, Inc. v. Furman*, 32 *N. J.* 199, 223–225 (1960). Moreover, as the statement of purpose reveals, *section* 1 was borrowed from Illinois where leasehold interests in state-owned property are taxable, see *Carrington v. People*, 195 *Ill.* 484, 63 *N. E.* 163 (*Sup. Ct.* 1902), and hence our view of the statute is buttressed by the proposition that our Legislature, in drawing upon the statutory law of another State, probably intended to accept also the interpretive gloss it then had in that jurisdiction. *Bollinger v. Wagaraw Building Supply Co.*, 122 *N. J. L.* 512, 519 (*E. & A.* 1939).

■ Reference is made to *N. J. S. A.* 54:4–2.1 which subjects State-owned lands to local taxation unless the lands of the State are less than 9% of the total area of the municipality as therein determined. The tax there authorized is upon land alone and at its historical cost to the State. The question is whether that statute controls when State property is leased for private purposes. We think it does not. That statute, which in fact antedates the Leasehold Taxing Act with which we are here concerned, deals, as it says, with property "used or to be used for State purposes," and obviously seeks to assist localities in which State holdings are large. The statute does not deal with the taxation of State properties leased for private use and hence there is no conflict with the Leasehold Taxing Act.

This brings us to *section* 10 of the statute, *N. J. S. A.* 54:4–2.12, which reads:

"This act shall not affect or apply to:
(1) property leased to or by any interstate agency existing under any interstate compact between the State of New Jersey and any other State or Commonwealth; or
(2) the leasehold estates and the appurtenances or tenancies of any person heretofore or hereafter renting or leasing real property owned by any municipality whether acquired by said municipality for public use pursuant to law or in any other manner or for any other lawful purpose whatsoever; or
(3) leasehold estates or tenancies of any person renting or leasing for residential use any house or apartment constructed or renovated under the 'Local Housing Authorities Law' (P. L. 1938, c. 19, as amended), 'Housing Co-operation Law' (P. L. 1938, c. 20), 'Redevel-

opment Companies Law' (P. L. 1944, c. 169), 'Urban Redevelopment Law' (P. L. 1946, c. 52), 'Public Housing Law' (P. L. 1933, c. 78), or any law of this State or of the United States granting, requiring, or authorizing tax assistance or total or partial tax exemption to real estate or improvements thereon used in connection with any public housing project or any veterans' housing project."

These exclusions were added by amendment to the original bill. We do not know precisely why the amendment was made. Presumably some groups feared the bill as introduced might be read to reach interests they wanted to protect. At any rate, we are unable to find significance in *section* 10 with respect to the constitutional issue before us. The reason is that any lease for private purposes made by the agencies therein mentioned which could be competitive with a federal lease would subject the property to taxation under other law. Hence the exclusion in *section* 10 could not result in discrimination against the federal government.

Subsection (1) of *section* 10 deals with interstate agencies. As to such agencies, we have held that a lease for private use as distinguished from a lease to private operators in furtherance of the public purpose for which the exemption was granted or a lease incidental to achieving that public purpose, will result in taxation. *Moonachie, Borough of v. Port of New York Authority*, 38 *N. J.* 414, 185 *A. 2d* 207 (1962). This holding was in keeping with an earlier decision that the exemption was not lost where the lease was made to serve essentially the public purpose the agency was authorized to further. *Port of New York Authority v. City of Newark*, 20 *N. J.* 386, 120 *A. 2d* 18 (1956). In this connection we note *New Jersey Turnpike Authority v. Washington*, 16 *N. J.* 38, 106 *A. 2d* 4 (1954), in which it was held that property of a State agency not used or held for the public purpose assigned to it is taxable.

As to subsection (2) of *section* 10, involving municipalities, the basic exemption statute has long been held not to embrace municipal property leased for private use. *Jamouneau v. Division of Tax Appeals*, 2 *N. J.* 325 (1949); *Jamouneau v. Local Government Board*, 6 *N. J.* 281 (1951).

█ With respect to subsection (3) of *section* 10, dealing with "leasehold estates or tenancies of any person renting or leasing for residential use" any house or apartment constructed or renovated under the laws therein cited, the exclusion was quite unnecessary because the operative portion of the statute was intended to apply only to leases for private purposes and these tenancies, although private in one view, are the very public object the laws were designed to achieve. In other words, none of these leases is for private use in the sense here involved, *Redfern v. Jersey City*, 137 *N. J. L.* 356 (*E. & A.* 1948). Clearly they present no competitive or discriminatory threat to the federal government.

█ Finally, if any of these exclusions should present a constitutional problem, we would see no difficulty in finding it to be severable.

█ Todd contends the tax upon its leasehold must be found to discriminate against the federal government because of the view of the Leasehold Taxing Act taken in *Walter Reade, Inc. v. Twp. of Dennis*, 36 *N. J.* 435 (1962); *In re Appeal of Howard D. Johnson Co.*, 36 *N. J.* 443 (1962), and *Martin v. Borough of Collingswood*, 36 *N. J.* 447 (1962). But none of those cases involved a lease for a private purpose. On the contrary, in each case the subject matter of the lease was a facility which the Legislature authorized the public body to provide for the public benefit. The issue was whether the Legislature intended the exemption to depend upon whether the public body furnished the public service itself, or through a management contract, or through a lease. We held the Legislature intended the property to be exempt so long as it was devoted to the public use contemplated by the exempting statute, without regard to the relationship between the public body and the operator of the facility. In short, where the lease is the medium used to further the public purpose the Legislature assigned to the State's agency, the reason for the exemption continues. In other words, as we stressed at the outset in our reference to the legislative statement, the Leasehold Taxing Act was intended to reach leases made for private

purposes, rather than a lease made to effectuate the very public purpose committed to the agency. In the case at hand, the lease is for private purposes, and not to further a public purpose of the federal government. If Todd were a lessee of the State or of any of its agencies, its interests would be taxable under the statute. Hence there is no discrimination against the United States or those with whom it deals.

We should mention one further matter. The tax levied against Todd was based upon a valuation of its leasehold interests rather than upon the value of the fee. In those situations in which a lease makes the property taxable under the general tax statutes, the basis of the assessment is the valuation of the fee rather than the lessee's interest therein. We are not called upon in this case to decide whether the Leasehold Taxing Act contemplated that the assessment shall be upon the value of the fee rather than the value of the leasehold. We note that, unlike our statutory scheme, the statutes of Illinois, from which our Legislature borrowed *section* 1 of the Leasehold Taxing Act, expressly provide for the valuation of a taxable leasehold estate "at its fair cash value, estimated at the price it would bring at a fair, voluntary sale." *Smith-Hurd Annot. Stat.*, c. 120, § 501(2). There seems to be no constitutional reason why the amount of the annual local tax upon properties in identical use must depend upon whether the user owns the fee or only some lesser interest. The burden upon and the benefit from government are the same. See *United States v. City of Detroit, supra,* 355 *U. S.* 466, 78 *S. Ct.* 474, 2 *L. Ed. 2d* 424. At any rate, if the Leasehold Taxing Act does measure the tax by the value of the leasehold interest as the parties here have assumed, the advantage runs to and not against lessees of the federal government.

The judgments are affirmed.

*For affirmance* — Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN —7.

*For reversal*—None.