CITY OF NEWARK, PETITIONER-APPELLANT, v. ESSEX COUNTY BOARD OF TAXATION, RESPONDENT-RESPONDENT.

Superior Court of New Jersey
Appellate Division

Submitted January 3, 1978—Decided January 24, 1978.

Before Judges MICHELS, PRESSLER and BILDER.

*Mr. William F. Hyland,* Attorney General of New Jersey, attorney for respondent (*Ms. Erminie L. Conley,* Deputy Attorney General, of counsel; *Mr. Harry Haushalter,* Deputy Attorney General, on the brief).

*Mr. Milton A. Buck,* attorney for appellant (*Mr. Melvin Simon* on the brief).

BILDER, J. S. C., Temporarily Assigned. This is an appeal by the City of Newark from a determination by the Division of Tax Appeals upholding the 1976 Essex County Equalization Tables with certain modifications to reflect the exclusion of certain F.H.A. and V.A.-financed sales wherein the sales prices were found to have been substantially distorted by extraordinary charges. In its challenge to the validity of the tables, Newark alleges three errors. First, F.H.A. and V.A.-financed transactions having sales prices distorted by extraordinary costs were improperly included in the sales-ratio study. Second, municipally owned properties acquired by foreclosure and leased to private lessees as residences were improperly included in the aggregate assessed value of municipally-owned leased property. And finally, the use of equalization ratios prepared by the Director of the Division of Taxation was improper because the method used to derive the tables distorts the true market value of the property in Newark due to a failure to reflect the effects of urban decay.

 Initially, we find no merit to Newark's contention that it was improper for the tax board to use the Equalization tables prepared by the Director of the Division of Taxation. The propriety of the use of these tables is well established. See *Willingboro Tp. v. Burlington Cty. Bd. of Tax.,* 62 *N. J.* 203 (1973). Newark contends that the method used to prepare the table by treating the city as a homogeneous unit distorts the results of urban decay by dampening the effects of deterioration in older parts of the city. Accordingly, its expert offered a suggested alternative.

Even the existence of another method, assuming a viable alternative had been thereby spelled out, would not prevent the use of the Director's tables. Any reasonable and efficient method of equalization may be used. *Id.* at 220.

■ Nor do we find merit in the contention that municipally-owned property leased out for residential purposes should be excluded from the tables. While the city's action in renting these foreclosure-acquired properties may serve a public purpose in a broad sense, the use to which the property is being put is private and the property is not exempt. *Jamouneau v. Division of Tax Appeals,* 2 *N. J.* 325 (1949); see *N. J. S. A.* 54:4–3.3 and *N. J. S. A.* 54:4–1.

### The F.H.A. and V.A.-Financed Sales

In *Trenton v. Mercer Cty. Bd. of Tax.,* 66 *N. J.* 470 (1975), recognition was given to the reality that in certain F.H.A. and V.A.-financed sales, because of extraordinary charges paid by the seller, the sales price is not a fair or accurate reflection of true market value. Accordingly, the rule was laid down that sales distorted by extraordinary costs should be eliminated from consideration.

> Once the sales price in an F.H.A. financed sale is shown to have been substantally distorted by extraordinary charges so that it does not reflect the true consideration for the property as between the buyer and the seller, it should be discarded and not used in the sales-ratio study at all. [at 473]

The dispute in the instant case arises with respect to the application of this principle to the particular sales in controversy.

It appears that the sales-ratio study in this case included some 908 residential sales of which 219 involved F.H.A. or V.A. financing. The city collected and furnished to the county tax board data with respect to 183 of these 219 sales. This data, derived from questionnaires, interviews and examinations of files, was properly considered by the Division.

*Newark v. Essex Cty. Bd. of Tax.,* 138 *N. J. Super.* 217 (App. Div. 1975). Analysis by the board expert disclosed that 138 of the F.H.A. or V.A.-financed sales involved points and/or closing costs paid by the seller and that the percentage ratio of those expenses to sales price (points plus closing costs divided by sales price) was 6.72%.

In light of this analysis, the board determined that when combined points and closing costs paid by the seller exceed 8% of the sales price, the costs are extraordinary and the particular sales should be excluded from the sales-ratio study. This figure was derived by adding a 1.28% factor to the 6.72% average in order to provide the flexibility which in its opinion the averaging process requires.

The Division of Tax Appeals determined that an aggregate contribution by the seller of at least 10% of the purchase price would be required for a finding of substantial distortion. Accordingly, 25 identified sales were excluded from the sales-ratio study.

■■ On the present record we find no basis for the application of the 10% figure to determine whether extraordinary costs included in an F.H.A. or V.A.-financed sale significantly distorts the sales price; indeed, we have reservations as to whether the sample used to derive the cutoff figure accords with the standards set forth in *Trenton.*

The mandate of *Trenton* is to identify and eliminate those F.H.A. and V.A. transactions in which the sales price is not a fair reflection of true market price. The sought-for result is the inclusion within the sales-ratio study of only those sales which reflect the true consideration—true value for assessment purposes being the goal.

The procedures employed by the board and the Division did not and could not determine the extraordinariness of charges in relation to sales generally—only in relation to other F.H.A. and V.A.-financed sales. Indeed, as calculated by the board, the extraordinary nature of the charges could only be determined in relation to F.H.A. and V.A.-financed

sales in which such charges were made.[1] To identify the transactions in which there is an unacceptable distortion of sales price, the charges must be compared with charges generally for that type of sale—without reference to the form of financing. This requires the inclusion of conventionally financed sales in the analysis.

Contrary to Newark's contention, we approve of the application of a fixed percentage to measure the utility of a particular sale, provided the percentage is derived in a rational way and is properly determined from a broad and representative statistical base. As noted, in the instant case the statistical base was probably broad enough but not representative enough. Additionally, we express doubts as to the derivation of the percentage.

Actions of the Division of Tax Appeals are presumed to be correct and will withstand judicial interference in the absence of a showing that they are arbitrary, capricious or unreasonable. *In re Millburn Tp.*, 110 *N. J. Super.* 330, 335 (App. Div. 1970). However, it must use reasonable methods in reaching the result. *Newark v. Essex Cty. Bd. of Tax., supra,* 138 *N. J. Super.* at 223. In deciding that 10% should be the appropriate cut-off point in the instant case, the Division said "the determination * * * is ultimately a question of judgment." No attempt was made to rationalize that figure with the data in evidence or the opinions expressed by the witnesses. No basis for arriving at that conclusion was articulated. See *Application of Howard Savings Inst. of Newark,* 32 *N. J.* 29. 52 (1960).

Additionally, it would appear that the validity of the conclusion was tested by an examination of its effect on the statistical base. The Division found that the use of the 10% cut-off would eliminate less than 3% of the residential sales, "thus aiding the statistical base." We note that inclusion of

---

[1]Some 45 sales which the data showed involved neither points nor closing costs paid by the seller were eliminated from the study and not used for averaging.

irrelevant or misleading data in the base can never aid the statistics; it can only make them misleading.

The determination of the Division of Tax Appeals with respect to the elimination of F.H.A. and V.A.-financed sales is reversed and the matter is remanded for further proceedings in conformance with this opinion, including specific findings and conclusions explaining its actions with respect to each sale or group of sales and any cut-off figure or figures adopted.