RIMM, J.T.C.
This is a local property tax matter in which the issue is the exemption of property owned by Atlantic County, leased to the New Jersey Department of Corrections (DOC) and operated by RCA Service Company (RCA) as a juvenile detention facility.
The subject property is known as Block 426, Lot 1. RCA, consisting of 7,000 square feet. It is a portion of the complex owned by Atlantic County in the taxing district of Egg Harbor City known as “Harborfields,” the Atlantic County juvenile detention facility. Prior to 1986, the entire facility was exempt from local property taxation.
On September 1, 1985, DOC, Atlantic County and RCA entered into a “three-party contract” for the purpose of participating in the “operation of a chronic, serious youthful offender *9 program in the State of New Jersey.” Thereafter the city assessed the subject portion of the complex for the tax year 1986 as of October 1, 1985, as follows:
Land -0-
Improvements $395,000
Total $395,000.
The county was dissatisfied with the assessment and filed a petition with the Atlantic County Board of Taxation which entered a judgment that the property was exempt from taxation. The city then filed a complaint in the Tax Court against the County of Atlantic, RCA and RCA Corporation[1] seeking to have the property assessed in accordance with the original assessment. After the filing of the complaint, DOC moved for permission to intervene as a defendant and for summary judgment. The motion to intervene was granted. Decision on the motion for summary judgment was reserved. The city then filed a motion for summary judgment. Since there are no factual disputes, the matter may be disposed of on the motions.
DOC argues that the property is owned by Atlantic County, is leased to DOC, is public property being used for a public purpose and is exempt from taxation under N.J.S.A. 54:4-3.3. The statute provides that “except as otherwise provided by ... [§ 54:4-1 et seq.\ the property of the State of New Jersey; and the property of the respective counties, ... used for public purposes, ... shall be exempt from taxation____” The city argues that the portion of Harborfields which is operated by RCA is taxable as real property pursuant to N.J.S.A. 54:4-1.10, referring to the “except” language in the beginning of N.J.S.A. 54:4-3.3. The statute provides that
[w]hen real property which is exempt from taxation is used by a private party in connection with an activity conducted for profit, and the use does not render the real property taxable pursuant to section 1 of P.L.1949, c. 177 (C 54:4-2.3) *10 or otherwise, the real property shall be assessed and taxed as real property of the private party____ [N.J.S.A. 54:4-1.10]
The introduction in the September 1, 1985 agreement states that DOC issued a letter of intent on August 27, 1984 for the operation of a chronic, serious youthful offender program in the State of New Jersey. The introduction also recites that the United States Department of Justice, through the Office of Juvenile Justice and Delinquency Prevention, has issued an agreement to RCA to partially offset the program’s costs. RCA was regarded as uniquely able to provide the services necessary for the accomplishment of the program. The introduction finally recites that, in order to implement the program, DOC “desires to lease from the County of Atlantic ... the rehabilitation portion of Harborfields facility located at Buffalo and Duerer Street, Egg Harbor City, N.J. and to make this site available to the Contractor for conducting the program.” Emphasis supplied. The “Contract concerns the safekeeping, care, supervision, subsistence and treatment of youth committed by a court to the Training School for Boys, Jamesburg, as defined in N.J.S.A. 30:lB-8.” Emphasis supplied. The location referred to in the contract, and which is the subject of the present litigation, was designated as a place of confinement by DOC in accordance with N.J.S.A. 30:4-91.2. The contract between DOC and RCA was for a term of one year with an option to extend the term for six more months.
The contract contains in it “The Lease Agreement,” which provides that the term is for 20 years commencing September 1, 1985 and terminating June 30, 2005. Continuation of the lease agreement and program beyond June 30, 1986 is contingent upon annual appropriations of sufficient funds in the DOC budget. If renewal grant funds are not received, DOC assumes responsibility for operating a juvenile rehabilitation program at Harborfields. DOC may meet this responsibility by operating the program itself or by entering into a contract with RCA or another party to conduct such a program, subject to the county’s approval of the program and contractor. DOC also agrees *11 to assume all financial responsibilities for the operation of the juvenile rehabilitation program at Harborfields.
The section of the agreement designated “Rent” provides that DOC shall pay the county $11 a square foot annually for the 7,000 square feet. In addition, the rent shall include $1,000 for common areas, and the annual rental fee shall not exceed $78,000. “Rental shall be payable quarterly on January 1, April 1, July 1, and October 1.” DOC is to reimburse the county for approximately one-third of the cost of utility charges which shall not exceed $15,000 for the first year of the “lease agreement.” By the agreement, DOC was required to purchase specified personal property from the county with the total cost not to exceed $5,400, payable prior to occupancy. The county was to provide meals for the youths participating in the program at the center, maintenance services and certain supplies, for all of which items DOC was to pay the county. In addition, DOC was to pay RCA for services it provided.
The premises are described in the agreement with particularity. The provision relating to exclusive space reads as follows:
The County agrees to lease and The Department agrees to rent approximately seven thousand (7,000) square feet of the former Harborfields Rehabilitation Center____
Said space shall include exclusive possession of the following areas:
300 Wing
400 Wing
Main Lounge (former Rehab Unit)
(2) Classrooms (former Rehab Unit)
Laundry Room
Trailer.
A separate entrance to the demised portion of the premises was designated, and, in addition to the exclusive space, the agreement provides for the use of common areas. DOC and RCA were to have the use of the kitchen, dining room, gym, basketball court, two tennis courts and the parking area on a schedule to be coordinated with the detention center.
Additional provisions are that each party agrees to indemnify and hold harmless all other parties from any claim or loss arising under “color” of the agreement, and that “[a]ny claim *12 made pursuant to this clause and any liability of the State of New Jersey is subject to the provisions and liabilities of the New Jersey Tort Claims Act and the New Jersey Contractual Liability Act.”
The agreement was amended in writing on October 10, 1986 to acknowledge that the city had assessed the portion of the structure being used by RCA and that “the rental fee” would be adjusted “to include compensation for the amount of taxes required to be paid ... as a result of the operation” at the facility.

I.

In arguing that N.J.S.A. 54:4-1.10, L. 1984, c. 176, § 1, precludes exemption for the subject property from local taxation, the taxing district traces the legislative history of the statute which was effective November 2, 1984. The act of which the section is a part is entitled “An Act concerning the taxation of exempt real estate in certain cases and supplementing chapter 4 of Title 54 of the Revised Statutes.” L. 1984, c. 176. The statement of the Senate Revenue, Finance and Appropriations Committee attached to Assembly Bill 883 which became L. 1984, c. 176, states that the bill provides:
[F]or the assessment and taxation of real property which is otherwise exempt, if it is used by a private party in connection with an activity conducted for profit. The private party is subject to taxation as though he owned the property or a portion of it.
Currently, exempt property leased to a non-exempt party is subject to taxation but if the property is used under a non-lease agreement, it remains non-taxable. This bill changes this inconsistency.
The statement then says that the bill conforms with the Governor’s recommendations and his conditional veto of the bill’s predecessor, Assembly Bill 3849.
The Governor’s veto message refers to the “leasehold taxing act,” N.J.S.A. 54:4-2.3, which provides as follows:
When real estate exempt from taxation is leased to another whose property is not exempt, and the leasing of which does not make the real estate taxable, the leasehold estate and the appurtenances shall be listed as the property of the lessee thereof, or his assignee, and assessed as real estate.
*13 It is clear from the message that the Governor sought legislation which would permit local government units to tax private users of federal property when that use results from some arrangement other than a lease since the local governing units already had authority to tax private users for premises leased to such users by the federal government. The purpose of N.J.S.A. 54:4-1.10 was then to avoid the loophole in the law that users of tax-exempt property by virtue of an agreement other than a lease would not have that property taxed simply because the use was not based on a lease. The Governor, of course, in his veto message proposed to amend the original bill presented to him to eliminate reference to the federal government so that the bill’s provisions would apply to all tax-exempt property. Otherwise the bill might have been interpreted as discriminating against the federal government. The amendments to the original bill proposed in the veto message had as their purpose the conforming of the legislation to the language in the “Leasehold Taxing Act,” N.J.S.A. 54:4-2.3.[2]
Given the Governor’s veto message and the committee’s statement, the purpose of N.J.S.A. 54:4-1.10 was to insure that exempt property which is either leased to or used by another whose property is not exempt is taxable for local property tax purposes. N.J. Hwy. Auth. v. Bloomfield, 8 N.J.Tax 637 (Tax Ct.1987).
In Thiokol, Chem. Corp. v. Morris County Bd. of Taxation, 41 N.J. 405, 197 A.2d 176 (1964), assessments imposed under the Leasehold Taxing Act, N.J.S.A. 54:4-2.3 et seq., were vacated by the trial court, and the vacating of the assessments was affirmed by the Supreme Court. For the tax years involved, the United States of America owned certain real property used *14 by a private corporation in the performance of contracts with the Department of the Navy. The nature of the relationship between the United States and the private corporation was the basis of the issue before the Court. The Court said that the contract did not employ such words as “rental” or “lease.” The contract spoke only in terms “of use of the facilities and of permission to use them.” Id. 41 N.J. at 411. The Court described in some detail the nature of the use of the premises and concluded that if the contract between the corporation and the United States amounted to a lease, assessments would have to be sustained. The Court, however, said that the Legislature deliberately chose the terms “lease” and “leasehold estate” and that the judicial role was “to interpret and apply the legislation carefully within the chosen limits as revealed by the specific language used.” Id. 41 N.J. at 416. The agreement before the Court fell short of a lease and was considered an agreement in the nature of a license, a permit, a privilege or a limited custodial use. Although the Court said it was sometimes difficult to draw a distinction between a lease and a more qualified right of use such as a license or a permit or some similar limited custodial privilege, no leasehold estate was considered to have been in existence in the tax years involved in the litigation. Accordingly, there was no interest in the real property subject to taxation in accordance with N.J.S.A. 54:4-2.-3, since, as the Court said, “the Legislature chose to limit the taxability of otherwise exempt real property in the use of one other than the owner to instances where the relationship between them was that of lessor and lessee.” Id. 41 N.J. at 420.
In the case of Todd Shipyards Corp. v. Weehawken, 45 N.J. 336, 212 A.2d 364 (1965), municipal taxes were levied on the leasehold interests of plaintiff in real property owned by the United States of America. The Court concluded that the statute did not unconstitutionally discriminate against the federal government. In the case, plaintiffs operations were concededly private. The premises were used by plaintiff in its business of ship repair. The assessments were made under the Lease *15 hold Taxing Act, N.J.S.A. 54:4-2.3 et seq., L. 1949, c. 177. The Court affirmed the assessments imposed by the municipality, concluding that the Leasehold Taxing Act did not create a lien on the property interest of the owner but rather created a local property tax lien upon the leasehold estate of the lessee which was personally liable for the tax.
Plaintiff contended that the tax upon its leasehold interest discriminated against the federal government because of the Court’s views of the Leasehold Taxing Act in Walter Reade, Inc. v. Dennis Tp., 36 N.J. 435, 177 A.2d 752 (1962); In Re Appeal of Howard D. Johnson Co., 36 N.J. 443, 177 A.2d 756 (1962) and Martin v. Collingswood, 36 N.J. 447, 177 A.2d 759 (1962). The Court, however, rejected this contention stating that none of those cases involved a lease for a private purpose. In each case the subject matter of the lease was a facility which the Legislature had authorized the governmental unit to provide for the public benefit. The issue in those cases, according to the Court in the Todd Shipyards case, was whether the Legislature intended the exemption to depend upon the furnishing of the public service by the public body itself through a management contract or through a lease. The Court noted that it had held in those cases that the Legislature intended that the property should be exempt as long as it was devoted to the public use contemplated by the exempting and authorizing statute, “without regard to the relationship between the public body and the operator of the facility.” Todd Shipyards, supra, 45 N.J. at 345, 212 A.2d 364. Since the leases were the method used to further the public purpose assigned by the Legislature to the governmental units, the reasons for the exemption continued. The Leasehold Taxing Act was considered to reach leases made for private purposes rather than leases made to carry out the very public purpose committed to the governmental agency. The Court then concluded, in order to put at rest the question of discrimination, that the Todd Shipyards lease was for private purposes, not to further a public purpose of the federal government, and if it were a lease made with the State *16 or any of its agencies, the lessee’s interest would be taxable under the statute.
The result in Thiokol, supra, was exactly what the Legislature sought to avoid by the adoption of N.J.S.A. 54:4-1.10. The statute has as its purpose precisely the same result reached in the Todd Shipyards case. Interests created by means other than leases will not, merely by virtue of the form of the agreement permitting the use, escape local property taxation. A loophole in the law, based on the form of an agreement as opposed to the substance of the use, was closed.
As the Tax Court and the Appellate Division said in Essex Cty. v. East Orange, 7 N.J.Tax 346 (Tax Ct.1985), rev’d on other grounds 214 N.J.Super. 568, 520 A.2d 788 (App.Div.1987), certif. den. 107 N.J. 120, 526 A.2d 189 (1987), the Leasehold Taxing Act, N.J.S.A. 54:4-2.3, does not bear on the requirement that county property be used for public purposes if the property is to be exempt from local property taxation under N.J.S.A. 54:4-3.3. As Judge Hopkins indicated in the Tax Court, N.J.S. A. 54:4-2.3 applies to property which is exempt by' virtue of its ownership. County owned property must also be used for public purposes in order to be exempt. The Appellate Division agreed with Judge Hopkins on this point, stating that N.J.S.A. 54:4-2.3 “is intended to apply in cases in which the ownership of the property regardless of use precludes taxation.” 214 N.J. Super, at 579, 520 A.2d 788. The Appellate Division then went on to say that it saw “nothing in N.J.S.A. 54:4-2.3 even remotely impacting on the requirement for exemption under N.J.S.A. 54:4-3.3 that county property be used for public purposes.” Ibid. The court said that N.J.S.A. 54:4-2.3 is applicable when the leasing of tax-exempt property does not make the property taxable. The statute’s purpose is to impose taxation on the lessee of non-exempt property so that the municipality will not be deprived of taxes when real property which is otherwise exempt is used for private purposes. The same interpretation applies to N.J.S.A. 54:4-1.10. The statute’s purpose is to impose taxation on the user of non-exempt property, whether the use arises by virtue of a lease or otherwise, so that the *17 municipality will not be deprived of taxes when real property which is otherwise exempt is used for private purposes. The Legislature sought by N.J.S.A. 54:4-1.10 to avoid the anomaly of exemption from taxation by virtue of an agreement denominated as a license or a right to use or by some other name, other than a lease. If county owned property is used, however, for private purposes, then under N.J.S.A. 54:4-3.3, the entire property is taxable. County of Essex v. City of East Orange, 214 N.J.Super. 568, 520 A.2d 788 (App.Div.1987), cert. den. 107 N.J. 120, 526 A.2d 189 (1987); Ocean Cty. v. Dover Tp., 3 N.J.Tax 434 (Tax Ct.1981). Simply put, if county-owned property is not used for a public purpose, it is taxable, and the taxing district need not turn to either N.J.S.A. 54:4-1.10 or -2.3 as the basis for taxation. Therefore, N.J.S.A. 54:4-1.10 has no applicability to the present case. The facts of ownership and use under N.J.S.A. 54:4-3.3 are the facts on which the determination in this case must be made.

II.

Exemptions from local property taxation are strictly construed, and the burden of proof is on the taxpayer claiming tax exemption to establish the asserted right. Jamouneau v. Division of Tax Appeals, 2 N.J. 325, 66 A.2d 534 (1949). However, the requisite of use for public purpose is accorded a liberal construction when tax exemption is sought by a government body. City of Newark v. Essex Cty. Bd. of Taxation, 103 N.J.Super. 41, 246 A.2d 509 (Law Div.1968), mod. 54 N.J. 171, 254 A.2d 513 (1969). Such liberal construction, however, does not obviate the necessity of proving public ownership and use in accordance with N.J.S.A. 54:4-3.3 in order for the property to be exempt from local property taxation.
In the present case, there is no dispute that the property is publicly owned. The dispute between the parties revolves around the use to which the property is put. Defendants claim that there is a public use. Plaintiff claims that there is a private use for profit. While the municipality does not dispute the nature of the public service rendered at the property by *18 DOC, it claims that the rendering of the service by a private, for-profit entity vitiates the right to an exemption from local property taxation.
No one can seriously doubt that the operation of a chronic, serious youthful offender program which has for its purpose the secure and appropriately supervised confinement of such offenders is a public purpose nor that real property used in such a program is used for a public use.
Given the public ownership of the property and such an admittedly public use, the issue between the parties is sharply drawn: does that portion of the three-party contract between DOC and RCA vitiate the exemption from local property taxation to which the property would otherwise be entitled?
In N.J.S.A. 30:lB-3, the Legislature expressly declared that DOC has the responsibility for the “custody, care, discipline, training and treatment of persons committed to State correctional institutions or on parole” and for assisting in the “treatment and training of persons in local correctional and detention facilities, so that such persons may be prepared for release and reintegration into the community.” DOC has broad discretion to determine the place and scope of confinement and to arrange for transfers of all state prison inmates. DOC has authority to: transfer inmates between state correctional institutional and charitable institutions or hospitals, N.J.S.A. 30:4-84; transfer inmates between state correctional institutions, N.J.S.A. 30:4-85; contract with the various New Jersey counties to house state prison inmates in county jails, N.J.S.A. 30:4-85; contract with the Federal government and other states for the purpose of housing New Jersey prisoners in Federal, and out-of-state, correctional institutions, N.J.S.A. 30:7C-1 et seq.; determine which correctional institution is best suited to handle the problems of a particular inmate, and transfer the inmate to such institution, N.J.S.A. 30:4-91.1; designate facilities other than state prisons as places of incarceration for state inmates, N.J.S. A. 30:4-91.2; and permit visits and participation in community work programs, outside of the correctional institution where an *19 inmate is confined, N.J.S.A. 30:4-91.3. DOC’s authority in connection with these powers has been recognized by both federal and state courts. Gibson v. Lynch, 652 F.2d 348, 355 (3 Cir.1981) (Commissioner has broad discretion to determine the length and place of an inmate’s incarceration); Dozier v. Hilton, 507 F.Supp. 1299, 1306 (D.C.N.J.1981) (New Jersey Law affords prison inmate no right to avoid transfer from one prison to another); Rocca v. Groomes, 144 N.J.Super. 213, 215, 365 A.2d 195 (App.Div.1976) (Prison inmates right to remain in a particular institution does not trigger due process protections).
Persons for whom DOC has responsibility include juvenile offenders in the Training School for Boys, Jamesburg. N.J.S. A. 30:lB-8. These are the very offenders in the program operated in the subject property. The contract in this matter specifically provides that “this Contract concerns the safekeeping, care, supervision, subsistence and treatment of youth committed by a court to the Training School for Boys, James-burg, as defined in N.J.S.A. 30:lB-8.” Section 1.2. The contract also states that DOC, in accordance with “N.J.S.A. 30:4-91.2 designates as a place of confinement, securely and appropriately supervised, the various locations stipulated” in the contract, including the subject property. N.J.S.A. 30:4-91.2 provides, in part, as follows:
The commissioner or his duly authorized agent, may designate as a place of confinement any available, suitable, and appropriate institution or facility whether owned by the State or otherwise, and may at any time transfer a person from one place of confinement to another.
If a private user of public property is carrying out a public purpose, the real property will not be taxed for local property tax purposes. In Walter Reade, Inc. v. Dennis Tp., supra, the New Jersey Highway Authority had erected a series of service areas along the Garden State Parkway containing restaurants and other facilities for the needs and convenience of the motoring public. Some of the restaurants were operated by Walter Reade, Inc. under an agreement with the authority. The taxing authorities conceded that the properties were exempt from taxation against the New Jersey Highway Authori *20 ty, but assessed the properties against Walter Reade, Inc. in accordance with N.J.S.A. 54:4-2.3. The municipalities claimed that the Legislature intended that the broad exemption given to the highway authority was limited by N.J.S.A. 54:4-2.3.
Walter Reade, Inc. operated the restaurants under what was termed a “license” agreement. The taxing districts argued that the agreement was a “lease.” The Supreme Court, in deciding the matter, said: “We think it unnecessary to decide the true nature of the transactions.” Walter Reade, Inc., 36 N.J. at 438, 177 A.2d 752. The Court then concluded that it was satisfied that the act creating the authority was intended to exempt the property from local property taxation even if the facilities were operated under a “lease.” Hence, the Court concluded that the statute upon which the townships relied did not apply to the matter before the Court.
The Court reviewed the statute creating the New Jersey Highway Authority, N.J.S.A. 27:12B-1 et seq., and particularly those provisions dealing with the authority’s governmental function, its authority to make contracts and agreements necessary to the performance of its duties, its authority to contract for restaurants and its exemption from taxation. There was no dispute that the restaurant facilities were part of the authority’s public use. The Court said that the question before it was whether the exempt status of the highway authority and its property was intended to depend upon whether authorized facilities were operated for the public use directly by the authority or through an arrangement with another party. The Court then went on to say that the statute did not expressly answer the question but that the solution was readily apparent from the sense of the situation. The Legislature intended that the highway authority should furnish the restaurant facilities as part of its public service. The Court concluded that it would be strange for the Legislature to enable the highway authority to choose among various methods for rendering its public services and then encumber the choice with tax consequences. The Court then noted that, while tax exemptions in favor of nongovernmental property owners are strictly construed in the *21 sense that an exemption will not be extended beyond the clear intent of the statute, exemptions in favor of governmental agencies should be liberally construed. Township of Hanover v. Town of Morristown, 4 N.J.Super. 22, 66 A.2d 187 (App.Div. 1949). Finally, the Court held that the highway authority was free of the burden of local taxation whether it achieved its specific public service by direct operation or through an authorized contractural arrangement with another. The land and the improvements used by Walter Reade, Inc. were deemed exempt from local property taxation. See also In re Appeal of Howard D. Johnson, Co., 36 N.J. 443, 177 A.2d 756 (1962); Martin v. Collingswood, 36 N.J. 447, 177 A.2d 759 (1962). Cf. N.J. Turnpike Authority v. Washington Tp., 16 N.J. 38, 106 A.2d 4 (1954) (The use of property rather than the status of the owner, or user, is the critical consideration in applying exemption statutes).
Concededly, the statute creating the New Jersey Highway Authority, N.J.S.A. 27A2B-1 et seq., and the act creating DOC, N.J.S.A. 30AB-1 et seq., are different statutes. Both, however, do deal with clear public purposes. As our Supreme Court has pointed out, the commercial importance of the highway authority cannot be doubted. Similarly, in the difficult world in which we live, the importance of the activities of DOC, particularly involving the treatment of juvenile offenders, and the solutions to problems involving such treatment, cannot be doubted either.
In Brody v. City of Millville, 120 N.J.Super. 1, 293 A.2d 211 (App.Div.1972), the city proposed to construct and lease a building at its municipal airport for commercial purposes. The court concluded that the lessee, by its business which included the repair of aircraft engines, “was sufficiently engaged in ‘airport purposes’ that it can easily be said the erection of the building by the municipality and the lease to this corporation comes within the grant of authority of N.J.S.A. 40:8-1.” Id. 120 N.J.Super. at 3-4, 293 A.2d 211. Users of the airport had a repair facility available which served an airport purpose no less than fueling and maintaining transient aircraft. The court held that the city could construct the building by means of municipal *22 bond financing. There then followed Millville v. Cumberland Cty. Bd. of Taxation, 122 N.J.Super. 444, 300 A.2d 849 (App.Div.1972), aff'd 62 N.J. 278, 300 A.2d 849 (1973), filed simultaneously with Brody. In the latter case the court rejected the city’s contention that all buildings at the airport, regardless of their use, were exempt from taxation. However, the court held that the real property which was the subject of the Brody ease, and to be leased to private companies, was sufficiently dedicated to a public use to justify exemption from local property taxation. The court also had no doubt that the restaurant operated at the airport served the requisite public purpose. See also Cranford Tp. v. Hope Tp., 4 N.J.Tax 251 (Tax Ct.1982).
Public property, however, leased for private purposes is not exempt from local property taxation. In Ocean Cty. v. Dover Tp., 3 N.J.Tax 434 (Tax Ct.1981), one-third of a county-owned building was leased to and occupied by a private commercial tenant. The court held that there was no public use for the one-third of the building rented to the tenant; the area occupied by the tenant was therefore not exempt from local property taxation; and, in the absence of a legislative provision for the apportionment, the entire county-owned building was subject to local property taxation.
Essex County v. East Orange, supra, involved a similar set of facts. A portion of a county-owned building was leased to a private banking corporation. The trial judge acknowledged that the portion of the building occupied by the private tenant was subject to local property taxation and apportioned the assessment between the tenant-occupied part of the building as taxable and the remainder of the building as exempt from local property taxation. The Appellate Division reversed, holding that private use of even a portion of a publicly owned property vitiates exemption from local property taxation. The court further held that apportionment for assessment purposes between the publicly and privately used portions of the building was not proper. Even the leasing for residential purposes of municipally owned property is a private use, and the property *23 being used is not exempt from local property taxation. Newark v. Essex County Board of Taxation, 155 N.J.Super. 586, 383 A.2d 140 (App.Div.1978).[3]
Given these guidelines, there are at least four different situations involving the use of publicly owned property: (1) the publicly owned property is used by a governmental or public entity for public purposes; (2) the publicly owned property is used by a prirate entity to accomplish a public purpose; (3) the publicly owned property is used for private purposes; and (4) the situation in the present case, publicly owned property is used by the government agency for a public purpose, but the government agency employs a private company to accomplish the purpose for it. Under the first two situations, the property is exempt from local property taxation. Under the third situation, the property is subject to local property taxation. The fourth situation is clearly analogous to the first two, and the property is exempt from local property taxation. The fact that the government agency employs a private company to carry out its public purpose should not result in local property taxation.
In the present case, the private company is at the subject property to carry out the directions, and to accomplish the purpose, of DOC. For example, the subject contract “concerns the safekeeping, care, supervision, subsistence and treatment of youth committed by a court to the Training School for Boys, Jamesburg, as defined in N.J.S.A. 30:lB-8.” Section 1.2. Emphasis supplied. Use of the real property which is the subject of this litigation serves the interests and purposes of the State of New Jersey, and the reasoning of Walter Reade, Inc. v. Dennis Tp., supra; Appeal of Howard D. Johnson Co., supra and Martin v. Collingswood, supra, applies to the present case. In those cases, the Supreme Court concluded that the State (in Reade *24 and Johnson) and Camden County (in Martin) should be able to carry out their public purposes unfettered by local property taxation. In arriving at that conclusion, the Court refused to exalt form over substance. In all three cases the Court refused to impose taxes solely on the basis of the form of the relationship between the governments involved and the entities supplying certain services. “The public purpose was thus furthered,” Martin, 36 N.J. at 450, 177 A.2d 759, and “it [was] unnecessary to decide the true nature of the transactions.” Walter Reade, Inc., 36 N.J. at 438, 177 A.2d 752.
There is another dimension to this case. By letter dated March 19, 1987, the Attorney General of New Jersey advised DOC that it did not have the authority to contract with a private profit-making entity for the operation of a rehabilitation program for juvenile offenders under N.J.S.A. 30:4-91.2.[4] The letter referred specifically to the three-party contract which is the subject matter of this litigation. As a result of the letter, the commissioner terminated the contract with RCA as of May 1, 1987. The county then took an appeal from the commissioner’s decision seeking a determination in the Appellate Division that the RCA service contract was valid and that the commissioner was compelled to apply for additional federal funding to continue the program.
In an unreported opinion, the Appellate Division said that the only issue on appeal was whether DOC had authority under N.J.S.A. 30:4-91.2 to contract with a for-profit entity to operate the juvenile rehabilitation program. The court declined to address the issue since it was satisfied that it was moot. The *25 service contract had expired and the court concluded that, even if the county was correct in its interpretation of the statute, the contract did not require a renewal or an extension of RCA’s services beyond March 1, 1987.[5] The court noted that the lease agreement provided that DOC may provide a juvenile rehabilitation program either by operating such a program itself or by entering into a contract with another party. The program remained in effect after the termination of the contract with RCA and is being operated and staffed by DOC. Accordingly, the court concluded that it did not have to decide the issue of whether a profit-making entity was a “facility” under N.J.S.A. 30:4-91.2. The court further said that the issue would, no doubt, be raised in future litigation if and when a profit-making entity is deprived of a contract or is damaged as a result of DOC’s interpretation of the statute. Finally the court said that resolution of the issue should await that case.
In the present case, in addition to its argument based on N.J.S.A. 54:4-1.10, the city also argues that the contract between DOC and RCA is improper and beyond DOC’s authority, as a result of which the property should also be held taxable. However, I hold that the property is publicly owned and is used for a public purpose, and it is therefore exempt from local property taxation. If the contract was proper under the statute, then the property is exempt from taxation. If the contract was not proper under the statute, the fact is that the public interest was served, the building was used for a public purpose, and the State should not, in the context of providing a facility for juvenile offenders, be penalized in the absence of a showing of some improper motive or dereliction on the part of DOC.
It is therefore not now necessary to deal with the propriety of the contract under N.J.S.A. 30:4-91.2 any more than it was necessary for the Appellate Division to do so in the suit brought by Atlantic County. The ultimate question of the propriety of a contract with a private entity under N.J.S.A. 30:4-91.2 should, *26 as the Appellate Division said, await the resolution of the issue when DOC’s right to contract with a private entity is the central issue before a court.
The Clerk of the Tax Court will enter a judgment that the subject property is exempt from local property taxation for the tax year 1986.

RCA Service Company is a division of RCA Corporation.

Executive department veto message dated January 9, 1984 to Assembly Bill 3849. As enacted, N.J.S.A. 54:4-1.10 does not refer to federally owned property; it does not discriminate against the federal government; it may not be applied in any way which would in reality discriminate against the federal government; and its enactment and application must conform with our constitutional requirement that "[p]roperty shall be assessed for taxation under general laws and by uniform rules.” N.J. Const. (1947), Art. VIII, § 1, par. 1(a).

The renting of publicly owned property in order to raise revenue, the so-called "revenue motive," is not an authorized public purpose which would result in the property’s exemption from local property taxation. Moonachie v. Port of N.Y. Auth., 38 N.J. 414, 185 A.2d 207 (1962); Millville v. Cumberland Cty. Bd. of Taxation, supra.

N.J.S.A. 30:4-91.2 also provides:
The word "facility" shall include private nonprofit community-based residential treatment centers which provide for the care, custody, subsistence, education, training and welfare of inmates.
Any such private nonprofit community-based residential treatment center must be certified annually by the commissioner as a secure and appropriately supervised place of confinement.
The Attorney General did say that DOC could contract with a non-profit entity for the operation of a juvenile rehabilitation program.

The contract was extended to May 1, 1987.