IN THE MATTER OF APPEAL OF ADOPTION OF RULES
REGARDING PROPERTY DISPOSITION OF A CASINO
LICENSEE (N.J.A.C. 19:41–7.2(A)).

Superior Court of New Jersey
Appellate Division

Argued September 16, 1987—Decided March 30, 1988.

Before Judges KING, GRUCCIO and D'ANNUNZIO.

*Peter G. Sheridan* argued the cause for appellant Atlantic City Casino Association.

*Katherine A. Smith,* Deputy Attorney General, argued the cause for respondent Division of Gaming Enforcement (*W. Cary Edwards,* Attorney General of New Jersey, attorney).

*Leonard J. DiGiacomo,* argued the cause for respondent New Jersey Casino Control Commission (*Robert J. Genatt,* Attorney).

*David G. Sciarra,* Assistant Deputy Public Advocate, argued the cause for respondent Department of the Public Advocate (*Alfred A. Slocum,* Public Advocate, attorney).

The opinion of the court was delivered by

GRUCCIO, J.A.D.

The Casino Control Commission (Commission), recognizing that the growth of the casino industry in New Jersey is not limited to the boardwalk area in Atlantic City, enacted a regulation designed to give it greater oversight of the casino industry's real estate activities. Given the great control the casino industry has over the real estate in the Atlantic City metropolitan area and given the underlying policy of casino gambling to promote revitalization and growth of Atlantic City and tourism in general, the enacted regulation established monitoring procedures which enabled the Commission to gather information on real estate activity in the casino industry. We are asked to consider whether the Commission went beyond its regulating and policing authority by enacting this regulation, and whether it followed the proper procedure in enacting the regulation.

On October 21, 1985, the Commission published a notice of proposed rule *N.J.A.C.* 19:41-7.2A. The notice described the rule's intended purpose: "to provide the Commission with certain information, as specified, to enable the Commission to monitor, review and assess the effect of casino industry real estate activities on Atlantic City, particularly as those activities relate to real property acquisition, change of use, demolition, and relocation of tenants." Although the Commission saw no real significant social impact on the casino industry, its aim was to protect Atlantic City and its citizens from any adverse social impacts that unmonitored real estate activities could foster. The economic impact was seen as minor in that the proposed rule would only cause an economic burden on the casino industry requiring it to create a procedure to ensure the submission of the required information to the Commission.

The Commission published notice of adoption of *N.J.A.C.* 19:41-7.2A (See Appendix I for full text of the Rule) on January 6, 1986, which included responses to comments received by the Commission from the Public Advocate and appellant Atlantic City Casino Association (Association). The Association contend-

ed there, as they do here, that the Casino Control Act does not vest in the Commission this regulatory authority and that the economic impact would be much greater because the disclosure of this information would dramatically affect real estate prices. The Association also contends that the Casino Reinvestment Development Act has preempted the Commission in casino-related real estate affairs.

The Association seeks appellate review of the legality of the adoption of *N.J.A.C.* 19:41–7.2A. Its basic contention is that the Commission acted beyond the regulatory scope of its delegated powers. The basis for evaluating a claim that an administrative agency's action is *ultra vires* is set forth in *New Jersey Guild of Hearing Aid Dispensers v. Long*, 75 *N.J.* 544 (1978), which states:

> In determining whether a particular administrative act enjoys statutory authorization, the reviewing court may look beyond the specific terms of the enabling act to the statutory policy sought to be achieved by examining the entire statute in light of its surroundings and objectives. *Id.* at 303 and cases there cited. The purpose of this inquiry is to ascertain whether the requisite authority may be said to be implicitly supplied, as "[t]hat which is implied is as much a part of the law as that which is expressed." [*Id.* at 562, *citing* and *quoting In re Suspension of Heller*, 73 *N.J.* 292, 303, 304 (1977)].

Central to our determination is the well-established rule that the agency's exercise of authority is entitled to a presumption of validity, *Id.* 75 *N.J.* at 563, and should not be invalidated unless it plainly transgresses the statute. *Id.* at 561.

■ Moreover, "the absence of an express statutory authorization in the enabling legislation will not preclude administrative agency action where, by reasonable implication, that action can be said to promote or advance the policies and findings that served as the driving force for the enactment of the legislation." *A.A. Mastrangelo, Inc. v. Environmental Protec. Dept.*, 90 *N.J.* 666, 683–684 (1982). The grant of authority should be liberally construed so as to effectuate the legislative intent. *See New Jersey Guild of Hearing Aid Dispensers, supra*, 75 *N.J.* at 562. We find that the adoption of *N.J.A.C.*

19:41–7.2A is within the Commission's express and implied powers and affirm.

"The [Casino Control Act] ... vests broad power over casino operations in the Commission which is authorized to adopt regulations, consistent with the policy and objectives of the act, as it deems necessary or desirable for the public interest in carrying out the provisions of the act. *N.J.S.A.* 5:12–69." *Bally Mfg. Corp. v. N.J. Casino Control Comm'n,* 85 *N.J.* 325, 328 (1981). The general policies of the act, set forth in *N.J.S.A.* 5:12–1b, are to permit properly regulated, controlled and developed casino gambling in an effort to rehabilitate and redevelop the existing tourist and convention facilities in Atlantic City along with the fostering and encouragement of new construction. The Legislature saw Atlantic City's resort, tourist and convention industries as critically important in the continued viability and economic strength of these industries throughout the State of New Jersey. *N.J.S.A.* 5:12–1b(2).

> Since the development of casino gaming operations in Atlantic City will substantially alter the environment of New Jersey's coastal areas, and since it is necessary to insure that this substantial alteration be beneficial to the overall ecology of the coastal areas, the regulatory and investigatory powers and duties conferred by this act shall include, in cooperation with other public agencies, the power and the duty to monitor and regulate casinos and the growth of casino operations to respond to the needs of the coastal areas. [*N.J.S.A.* 5:12–1b(10) ].

These powers and duties have been delegated to the Commission. *N.J.S.A.* 5:12–63. "The commission may exercise any proper power or authority necessary to perform the duties assigned to it by law, and no specific enumeration of powers in this act shall be read to limit the authority of the commission to administer this act." *N.J.S.A.* 5:12–75. The Commission must also regulate where it sees that the act, by its rules and regulations issued therefrom is defective or deficient in some aspect. *N.J.S.A.* 5:12–72.

Specifically, the act provides that the Commission has the duty and power to "review architectural and site plans to assure that the proposal is suitable by law enforcement, aesth-

etic and architectural standards." *N.J.S.A.* 5:12–1b(11). Additionally, the Commission is empowered to strictly regulate and control the casino industry in light of the act's policies and developmental goals. *N.J.S.A.* 5:12–1b(13).

Essentially, the challenged regulation, *N.J.A.C.* 19:41–7.2A, seeks information from casino licensees and casino license applicants regarding their real property holdings in Atlantic City. This information, once furnished, should enable the Commission to determine whether the proposed action of the licensee or applicant is consistent with its obligation to assure "the suitability of the casino and related facilities and its proposed location, and that the proposal will not adversely affect casino operations or overall environmental conditions." *N.J.S.A.* 5:12–84e. Subsection 84 of the act requires the applicant to supply documentation, information and assurances to the Commission necessary for that agency to properly determine the viability of the applicant. All applicants, licensees and registrants have a continuing duty to provide any assistance and information required by the Commission. *N.J.S.A.* 5:12–80d.

The Commission clearly has been empowered to request such information. The general policies of the Casino Control Act clearly address the redevelopment of the resort,[1] tourist and convention industry. The act expressly and impliedly covers real estate through encouragement of rehabilitation of existing facilities and the construction of new facilities. The adopted rule simply provides the Commission with information needed

---

[1]The redevelopment of Atlantic City has been largely in the boardwalk area. However, vast tracts of land remain vacant and many buildings are in total disrepair. Approximately 7% of the total assessment of real property for 1988 [$438,412,100 (7% of $6,267,359,080) ] is classified as vacant land by Atlantic City. *Assessment Sheet: Atlantic City Assessor's Office* (1988). As many as 324 structures are in need of immediate demolition because they are dilapidated and a public safety hazard. *City–Wide Demolition List, City of Atlantic City: Code Enforcement—Neighborhood Preservation Program.* This information is on file with the above-mentioned Atlantic City agencies.

to properly and efficiently oversee the act's redevelopment goals.

We think it important at this juncture to discuss certain information relevant to property values in Atlantic City. For the year 1986, the net total taxable value of land and improvements for Atlantic City was $5,538,878,180 which is over one-half of the total of $10,221,293,846 for the County of Atlantic. *State of New Jersey, Annual Report of the Division of Taxation in the Department of the Treasury for the Fiscal Year 1986* 268 (hereinafter *Annual Report*). This $5.5 billion total taxable value means that Atlantic City has the largest net total taxable value of real property in the State. *See id.* at 268–367.

Information analyzed by the Atlantic City Board of Assessors and the Atlantic County Board of Taxation indicates that in 1977 the Atlantic City property taxes paid by casino properties was 8.6% of the total property tax. *Atlantic City Casino Association: Fact Sheet* 4 (Oct.1987). By 1987, that figure had risen to 62.2% which represents $3,643,471,000, *i.e.*, the assessed value of the casino hotel property. By comparison, in 1986 the assessed value was $3,363,629,000 or 60.5% of the city's total taxable real property. *Ibid.* We think it interesting to note that this 1986 total is larger than every other city in the State, absent the casinos host city, Atlantic City. *See Annual Report, supra*, at 268–367. The city with the closest real property value in 1986 was Woodbridge in Middlesex County at $3,257,080,200. *Id.* at 320. The spectacular rise in value and dominance of casino industry property and the overall value of Atlantic City property is evident from the chart in Appendix II, *supra*.

The significance of these figures is this: the casino industry owns and controls over 62% of the taxable property in Atlantic City which results in taxable property values greater than any other city in the State. Therefore, the aggregate casino properties represent the largest single real property value in the State. The Commission, the body entrusted with enforcement

of the act and with policing the casino industry in this State, must be permitted to review the casinos' real estate holdings and their plans for the properties' use to determine whether they comply with the express and implied purposes of the act. Such reviews are necessarily proper in light of both the Commission's duties and powers, and the prominent position the casino industry plays in ownership control of real estate in Atlantic City and its impact upon the City, County and State. Most importantly, it must now review and report to the Legislature, the Governor and the citizens on what is commonly referred to as the unfulfilled promise of rehabilitation in the residential sections of Atlantic City.

■ Appellant contends that this specific power has been delegated to the Casino Reinvestment Development Authority (Authority). *N.J.S.A.* 5:12–153 *et seq.* The general purpose of the Authority is to manage the proceeds received under *N.J.S. A.* 5:12–144.1 and 5:12–162 and to direct the rehabilitation of blighted areas of Atlantic City. *N.J.S.A.* 5:12–160 and 5:12–161. The Authority has no dominion over the independent investments by casinos. Their basic concern is the funds, which the casinos are required to pay, earmarked for the redevelopment of Atlantic City. Initial estimates suggest that the Authority will supervise $1.4 billion of mandated casino investments over a 25–year period. Almost half of that sum is designated for the Atlantic City area. The Authority has already approved $138 million in project monies for 1,064 housing units at five Atlantic City locations.[2]

■ The legislative scheme obviously intended that both the Commission and the Authority be fully informed of real estate holdings of the casino industry in New Jersey. While the Authority is the agency directly dealing with the redevelopment

---

[2] *See* Kotok, *The Payoff on Promises for Atlantic City,* Atlantic City Press, Jan. 3, 1988, § E, at 1. David Kotok is the chairman of the Casino Reinvestment Development Authority.

issue, the Commission has the overall responsibility of review-
ing and reporting on the casino industry's activities for the
benefit of the general welfare of the State. We note that a
member of the Commission is a voting member on the Authori-
ty's board. *N.J.S.A.* 5:12–153(a)(4). This seat is currently
occupied by the Commission chairman. At best, the Authority
and the Commission have concurrent jurisdiction. The creation
of the Authority in no way preempts the Commission's powers
and duties.

█ Lastly, appellant contends that the Commission failed to
comply with the requirements of *N.J.S.A.* 52:14B–4(a)(2) in
promulgating the regulation. That section requires an adminis-
trative agency, when proposing a rule, to:

> Prepare for public distribution at the time the notice appears in the Register
> a statement setting forth a summary of the proposed rule, a clear and concise
> explanation of the purpose and effect of the rule, the specific legal authority
> under which its adoption is authorized, and a description of the expected
> socio-economic impact of the rule. [*N.J.S.A.* 52:14B–4(a)(2)].

Such a notice appeared and it completely complied with the
statute.

Specifically, appellant challenges the economic impact state-
ment as incomplete and insufficient. All that is required is for
the agency to describe the *expected* economic impact. The
statement describes only a minor economic burden attributed to
the process of submitting the information.

The Association's fear that the submission of the required
information will have a dramatic effect on real estate prices is
wholly unwarranted and without foundation in fact. The Com-
mission addressed this concern by its assurance that the infor-
mation would most likely be held confidential under *N.J.S.A.*
5:12–74d. This confidentiality should not only alleviate the
Association's concern but will, in fact, aid in preventing repeti-
tion of the wild speculation that accompanied the early years of
casino gambling. The Commission afforded interested parties
with ample opportunity to respond to the proposed rule. The

information provided was in compliance with the relevant statutory provisions. The comments received were fairly considered.

In sum, we find that in view of the Commission's broad powers, and in this case, its specific power both express and implied, *N.J.A.C.* 19:41–7.2A was properly adopted, both in its procedural aspect, and in the proper exercise of the Commission's regulatory power.

Affirmed.

## APPENDIX I

19:41–7.2A   Disposition of property of a casino licensee or applicant for a casino license.

(a) It shall be an affirmative responsibility of each casino licensee or applicant for a casino license, as this term is defined in (b) below, to:

1. Submit to the Commission a copy of all agreements regarding the lease or purchase of, or the option to lease or purchase, any residential, commercial or industrial structure in Atlantic City entered into by the licensee or applicant, or any affiliate of the licensee or applicant. Such submission shall be provided within two days of the execution of the agreement;

2. Notify the Commission of any anticipated demolition by the licensee or applicant, or any affiliate of the licensee or applicant, of any existing structure in Atlantic City within two days of execution of the contract for demolition or at the time of application for a permit to demolish such structure, whichever occurs earlier, but in no event less than five business days prior to demolition. Such notification shall include a description of the property and its use, and the intended use of the site following demolition. The licensee or applicant shall also provide such other information as may be indicated from the materials submitted and requested by the Commission;

3. Notify the Commission of any anticipated change of use or occupancy of any real property of the licensee or applicant, or its affiliate, located in Atlantic City, as soon as the licensee

or applicant, or its affiliate, determines to effect such change of use or occupancy, but in no event less than five business days prior to such change. Such notification shall include the full terms and conditions of relocation and a schedule of any tenants who are to be relocated. The licensee or applicant shall also provide such other information as may be indicated from the terms of the agreement and requested by the Commission;

4. Be responsible for compliance with the conditions imposed by this section regardless of whether the licensee or applicant, or its affiliate, undertakes any of the enumerated transactions directly or through an agent or intermediary, or through a contract which requires a seller, lessor or third party, as a condition of sale, lease, option or transfer, to institute relocation proceedings against the tenants, or to demolish or otherwise to alter the present use of any residential, commercial or industrial structure in Atlantic City.

(b) For the purposes of this section an "applicant for a casino license" or an "applicant" means an entity which has submitted the $100,000 nonrefundable deposit required by *N.J.S.A.* 5:12–139(c).

(c) Nothing in this section shall be construed to relieve a casino licensee or applicant of its obligation to demonstrate its initial and continued compliance with the requirements of *N.J.S. A.* 5:12–84(e) in order to obtain or maintain its casino license.

APPENDIX II

CASINO HOTELS' PAYMENT TOWARD ATLANTIC CITY PROPERTY TAX (1)
($ IN THOUSANDS)

| YEAR | CITYWIDE ASSESSED VALUE | TAX RATE PER $100 ASSESSED VALUE | TOTAL PROPERTY TAX | CASINO HOTEL ASSESSED VALUE | TAXES PAID BY CASINO HOTELS | % OF TOTAL CITY PROP- ERTY TAXES PAID BY CASINO PROPERTIES |
|------|------|------|------|------|------|------|
| 1977 | $ 308,877 | $ 7.94 | $ 25,525 | $ 26,711 | $ 2,121 | 8.6% |
| 1980 | 863,845 | 4.07 | 35,158 | 326,704 | 13,297 | 37.8% |
| 1981 | 1,211,515 | 5.04 | 61,060 | 563,512 | 28,401 | 46.5% |
| 1982 | 1,528,128 | 4.50 | 68,766 | 895,392 | 40,293 | 58.6% |
| 1983 | 1,549,336 | 4.32 | 66,931 | 951,262 | 41,094 | 61.4% |
| 1984 | 1,993,629 | 3.90 | 77,752 | 1,244,901 | 48,551 | 62.4% |
| 1985 | 2,260,730 | 3.87 | 87,490 | 1,640,452 | 63,483 | 72.6% |
| 1986 | 5,563,291 | 1.96 | 109,041 | 3,363,629 | 65,927 | 60.5% |
| 1987 | 5,861,132 | 1.96 | 114,878 | 3,643,471 | 71,412 | 62.2% |

(1) INCLUDES ATLANTIC CITY, ATLANTIC COUNTY, AND SCHOOL TAXES.

SOURCE: ATLANTIC CITY BOARD OF ASSESSORS & ATLANTIC COUNTY BOARD OF TAXATION
PREPARED BY: ATLANTIC CITY CASINO ASSOCIATION

[Atlantic City Casino Association: Fact Sheet 4 (Oct. 1987)].