RIMM, J.T.C.
This is a local property tax matter involving issues of exemption, valuation, and discrimination. The matter is presently before me on plaintiffs motion for summary judgment determining that the property is exempt from local property taxation and on defendant’s cross-motion for summary judgment determining that the property is subject to local property taxation.
Plaintiff, Renaissance Plaza Associates, L.P. (“Renaissance”), filed with the Casino Reinvestment Development Authority (“CRDA”) a proposal for development of an urban shopping center to be anchored by a supermarket. The 1984 amendments to the Casino Control Act, N.J.S.A 5:12-1 to 5:12-210 (“the Act”), created the CRDA. L. 1984, c. 218, eff. Dec. 19, 1984, codified as N.J.S.A. 5:12-153 to 5:12-183. One purpose for establishing the CRDA was:
to encourage investment in, or financing of, any plan, project, facility, or program which directly serves pressing social and economic needs of the residents of the jurisdiction or region in which the investment is to be made, including' but not limited to, schools, supermarkets, commercial establishments, day-care centers, parks and community service centers, and any other plan, project, facility or program which best serves the interest of the public____
[N.J.S.A. 5:12-160.j.]
The CRDA determined that the Renaissance Plaza Retail Development Project (“the project”) was an “eligible project” pursuant to N.J.S.A. 5:12-173. At a meeting on April 13, 1993, the CRDA made a preliminary determination of eligibility for the project, stating that:
[the project is] in furtherance of the public purposes of the Authority as set forth in N.J.S.A. 5:12-160 and promotes the most pressing social, health and economic well being of the people of the State of New Jersey and the residents of the City of Atlantic City and is therefore, an ‘eligible project’ as set forth in N.J.S.A. 5:12-173.
On June 8,1993, the CRDA adopted Resolution No. 93-49 entitled “Resolution of the Casino Reinvestment Development Authority Concerning Approval of Eligibility and a Reservation of Funds for the Renaissance Plaza Retail Development Project.”
The CRDA exercised its power of eminent domain to acquire the subject property and reserved $5,500,000 to provide a loan to Renaissance to fund the Project. After completion of the land *345 acquisition, the CRDA leased the property to Renaissance under a ninety-nine year ground lease on April 17, 1995. The property consists of 4.75 acres located in uptown Atlantic City on a block now bordered by Arctic, Atlantic, Kentucky, and New York Avenues. The lease contained an option to purchase the property after the expiration of the first twenty years of the lease. The lease further provides Renaissance with the right to contest real estate tax assessments. The lease also restricts Renaissance’s use of the property to only those uses that are consistent with the Act. Section 6.01 of the lease, entitled “Ownership of Project Facilities,” provides:
The Project Facilities and all other permanently installed improvements, fixtures and furnishings which Tenant or any Subtenant may construct, cause to be constructed, or cause to be brought upon the land comprising the Leased Property from time to time during the Term shall be owned for all purposes (including tax ownership) by the Tenant or Subtenant as applicable, and not Landlord.
Section 7.01 of the lease required the tenant to pay “any and all real estate taxes, assessments ... including but not limited to assessments for public improvements or benefits or any added or omitted assessment ... assessed, levied, charged or imposed upon or become due and payable and a lien upon the Leased Property or any part thereof, including the land .... ” Additionally, Section 7.03 required the tenant to furnish proof of payment of taxes within thirty days of payment.
Construction commenced immediately after the parties entered into the lease on April 17, 1995 and continued for the next sixteen to eighteen months. No taxes were assessed on the property during construction. On October 24, 1996, the City imposed an added assessment for 1996 based on a twelve-month value as follows:
Land $ 3,477,200
Improvements $ 6,678,000
Total $10,155,200.
The assessment was prorated for a period of six months, and the total added assessment was $5,077,600. Prior to the added assessment in 1996, the property was listed as exempt from local *346 property taxation. Notice of the assessment was .mailed to the CRDA, and then forwarded by the CRDA to Renaissance on October 30,1996 by overnight mail.
On November 27, 1996, Renaissance, after informing the CRDA of its intent to do so in accordance with the lease, filed a petition of appeal with the Atlantic County Board of Taxation seeking a reinstatement of the tax exemption or, in the alternative, a reduction of the assessment based on valuation and discrimination. On December 9, 1997, the City filed a cross-appeal seeking to have the added assessment on land apply for twelve months and the added assessment on improvements apply for nine months. On December 12, 1996, by agreement between the parties, the county board dismissed the appeals without prejudice. On January 27, 1997, Renaissance filed a complaint with the Tax Court appealing the county board’s judgment of dismissal. At oral argument'on September 19,1997, Renaissance conceded that the improvements on the property ai’e not exempt from local property taxation. Accordingly, Renaissance now argues that (1) the land is owned by the CRDA, and (2) the land is used for a public purpose.
Renaissance contends that the land is owned by the CRDA and is exempt from local property taxes under N.J.S.A. 5:12-167, which exempts all “property of’ the CRDA from taxes. Renaissance further argues that the property is exempt as property used by a private entity at the direction of a public entity in order to fulfill a public purpose. The City, on the contrary, argues that the ninety-nine-year lease, with an option to purchase the property after the expiration of twenty years, equals ownership for purposes of the Act, and, therefore, that the subject property is not “property of’ the CRDA. In addition, the City contends that Renaissance is a private entity operating a retail shopping center for private purposes and is not exempt from local property taxes.
I
The CRDA is “a unique tool of urban redevelopment for the City of Atlantic City ... to directly facilitate the redevelopment of existing blighted areas and to address the pressing social and *347 economic needs of the City of Atlantic City ... by providing eligible projects in which licensees shall invest;----” N.J.S.A. 5:12-160.a. In essence, the CRDA is a financing mechanism for certain “eligible projects” that help Atlantic City redevelop blighted areas for the social and economic welfare of the City and its residents. See N.J.S.A. 5:12-160.a. In order to enable the CRDA to fulfill its purposes, the Legislature provided it with the authority to acquire property. N.J.S.A. 5:12-182.b. All CRDA property is declared to be exempt from taxation pursuant to N.J.S.A. 5:12-167 which states:
[a]ll property of the N-RDA] is declared to be public property devoted to an essential public and governmental function and purpose and shall be exempt from all taxes and special assessments of the State or any subdivision thereof.
Thus, unless the subject property is “property of” the CRDA for purposes of N.J.S.A 5:12-167, or, unless some other exemption provision applies, the property is subject to local property taxation.
In this ease, although the CRDA leased the property to Renaissance, the lease is tantamount to a transfer of ownership of the property for local property tax purposes. The issue of whether a lease can create ownership in the lessee has been addressed in numerous contexts by the courts of New Jersey. In each situation, the circumstances of the lease and the nature and intent of the legislation involved govern the determination of whether ownership of property is in the lessee.
In Ocean Grove Camp Meeting Ass’n of Methodist Episcopal Church v. Reeves, 79 N.J.L. 334, 75 A. 782 (Sup.Ct.1910), aff’d, 80 N.J.L. 464, 79 A. 1119 (E. & A.1910), the court upheid the assessment of land held by a lessee under a term for years. In that case, tenants held property under ninety-nine-year leases renewable “in perpetuity.” Id. at 340, 75 A. 782. The court held that “[a] tenant for years has an interest in land, and is therefore an owner of property.” Id. at 336, 75 A. 782 (citing State, National Ry. Co. v. Easton & Amboy R.R. Co., 36 N.J.L. 181 (Sup.Ct.1873)). The court stated that “[i]t is quite plain that an instrument demising to one and his heirs and assigns a long term of years in land renewable in perpetuity, conveys an, ownership *348 equivalent to a fee simple.” Id. at 338, 75 A. 782. Thus, the court upheld the assessor’s original assessment of land levied against the tenants who held under ninety-nine-year leases renewable in perpetuity.
In MacMillan v. Director; Div of Taxation, 180 N.J.Super. 175, 434 A.2d 620 (App.Div.1981), aff’d 89 N.J. 216, 445 A.2d 397 (1982), the Appellate Division reversed the Tax Court [1] and held that in order for taxpayers to receive the benefits of the Homestead Rebate Act, the taxpayers had to have a proprietary interest in the property. The interest “is satisfied only by: legal or beneficial ownership; a tenancy for life or for 99 years or more;____” Id. at 179, 422 A.2d 819. This holding indicates that, for certain purposes, a ninety-nine-year leasehold results in ownership in the lessee. The Tax Court had held that something less than a proprietary interest could trigger the Homestead Rebate Act because such a result was consistent with the “spirit” of the Act. Id. at 282, 422 A.2d 819. However, the Appellate Division relied on the inflexibility of the requirement for the type of interest involved.
In Lake End Corp. v. Rockaway Tp., 185 N.J.Super. 248, 448 A.2d 475 (App.Div.1982), the Appellate Division held that subdivided properties held under ninety-nine-year leaseholds were subject to local property tax assessments to the tenants as fee owners. The court stated that:
A long-term lease conveys an ownership equivalent to a fee simple. Ocean Grove Camp Meeting v. Reeves, 79 N.J.L. 334 [75 A. 782] (Sup.Ct.1910), aff’d 80 N.J.L. 464 [79 A. 1119] (E & A 1910)... The equivalency of the leasehold interests herein to a fee interest is pointed up by comparison to the language in our Homestead Rebate Act, N.J.S.A. 54:4-3.80... We hold, therefore, that the individual leaseholds may be assessed as individual parcels of real property.
[Id. at 256-57, 448 A.2d 475.]
The court, citing both Ocean Grove and MacMillan, concluded that long term leaseholds equate to fee ownership for local proper *349 ty tax assessment purposes. Such a holding supports the principle that “[a]ll taxable property is to bear its full, equal and just shares of taxes.” Id. at 253, 448 A.2d 475 (citing Ridgefield Park v. Bergen Cty. Bd. of Tax., 62 N.J.Super. 133, 141, 162 A.2d 132 (Law Div.1960), rev’d, on other grounds, 33 N.J. 262, 163 A.2d 144 (1960)).
Similarly, in Ric-Cic Co. v. Bassinder, 252 N.J.Super. 334, 599 A.2d 943 (App.Div.1991), the Appellate Division held that ninety-nine-year leases renewable in perpetuity constituted fee ownership for purposes of determining that a lessee was a “developer” in order to apply for a land use variance under N.J.S.A. 40:55D-46. The statute defines “developers,” i.e., applicants for variances before a municipal board, as “the legal or beneficial owner or owners of a lot or of any land proposed to be included in a proposed development, including the holder of an option or contract to purchase, or other person having an enforceable proprietary interest in such land.” N.J.S.A. 40:55D-4. The court held that a tenant holding under a ninety-nine-year lease renewable in perpetuity held “an interest in land” pursuant to N.J.S.A. 40:55D-4 and thus was permitted to apply for a variance. Ric-Cic Co., supra at 342, 599 A.2d 943. The court commented that, although case law exists both extending and refusing to extend the concept of fee ownership to long term leases in various legal settings, this “show[s] only that an unconventional legal interest may be classified in one category or another, depending on the purpose of the categorization.” Id. at 341, 599 A.2d 943.
Renaissance relies on City of Atlantic City v. Cynwyd Investments, 148 N.J. 55, 689 A.2d 712 (1997), in which the Supreme Court declined to hold ninety-nine-year leaseholds equivalent to fee simple ownership. The case involved condemnation of property and whether the ninety-nine-year lessee was entitled to the same rights as the record owner in order to defend against condemnation. The Court stated:
[whether a ninety-nine year lessee should be considered a de facto fee simple owner for condemnation purposes constitutes an issue of first impression. In general, the rights of the holder of a ninety-nine-year lease depend on the contract and the legislative intent underlying the applicable statutory regime. Although *350 ninety-nine-year lessees are deemed to be equivalent to fee simple owners for certain purposes under the law, we decline to apply the doctrine to condemnation. There are instances when the decision to condemn must be made very swiftly and it might be difficult to ascertain the terms of leasehold interests.
[Id. at 72, 689 A.2d 712.]
The Court ruled against extending ownership in the context of condemnation proceedings because addressing the concerns of the leasehold interests in such proceedings would be too burdensome. Further, the nature of the proceedings often requires swift action, and determining the interests of lessees would impede the condemnation proceeding.
Renaissance’s reliance on Atlantic City v. Cynwyd Investments, supra, is misplaced. The present case lacks the urgency of a condemnation proceeding. It is not “difficult to ascertain the terms of the leasehold interests” in the case of CRDA property leased to a private entity for purposes of operating a retail' shopping center under a ninety-nine-year lease with the option to purchase after twenty years.
The lease in this case clearly contemplates that Renaissance would be responsible for all taxes on the property. See, Lease Agreement of April 17, 1995 §§ 6.01, 7.03. Further, “the legislative intent underlying the statutory regime” in this case is clear. The Legislature created the CRDA in order to provide an authority to “encourage investment in, or financing of’ projects which address the pressing social and economic needs of Atlantic City. N.J.SA. 5:12 — 160.j. The CRDA would be operating hi a manner adverse to the economic needs of Atlantic City if it were to shield lessees from local property taxes. Thus, Cynwyd does not support Renaissance’s argument that the CRDA is the owner for purposes of local property taxation.
Renaissance also relies on West Jersey Grove Camp Ass’n v. Vineland, 80 N.J.Super. 361, 193 A.2d 785 (App.Div.1963). In that casé, the court refused to conclude that there was ownership in a situation where plaintiffs’ applications for senior citizens’ exemptions were denied. The court held that the plaintiffs, holding the land under ninety-nine-year leases, were not owners of them dwelling houses for purposes of N.J.S.A. 54:4-3.37, repealed *351 by L. 1963, c. 172 § 11, (codified as amended at N.J.S.A. 54:4-8.41). The court relied on the fact that the leases were for ninety-nine years, and not renewable. Thus, the equivalence of ninety-nine-year leaseholds to fee simple ownership does not extend to lessees for purposes of the senior citizens’ exemption. It is important to note that the court denied ownership status in order to deny the exemption claims.
Renaissance’s reliance on West Jersey Grove Camp Ass’n v. Vineland, supra, 80 N.J.Super. 361, 193 A.2d 785, is also misplaced. The court’s refusal to extend the ownership doctrine to applicants for the senior citizen tax exemption was not based solely on the categorization of the leases as non-renewable. Renaissance states in its Reply Brief that:
In Wext Jerxey, the court held that 99 year ground lessees who constructed their own improvements at their own expense and who did not have any right to renew the leases were not the equivalent of fee simple owners for purposes of claiming a senior citizen tax exemption.
However, the court in West Jersey Grove Camp Ass’n based its decision on the fact that “[s]tatutes providing for exemption from taxation are strictly construed ... [andj[a]ll doubts are resolved against the party claiming the benefit thereunder.” Id. at 365, 193 A.2d 785. The court stated that if the Legislature had intended lessees to be the recipients of the exemption it would have so provided in the statute. Thus, the court’s decision was not based on the nature of the ninety-nine-year leasehold, but on the nature of the exemption claim and the status of the taxpayers. Extending that principle to the present case requires a denial of Renaissance’s claim for exemption under the Act by strictly construing N.J.S.A. 5:12-167, which exempts property of the CRDA. The subject property is not “property of’ the CRDA as required by the Act.
The CRDA is a financing agency. Its purpose is to encourage investment in, or financing of, eligible projects. N.J.S.A. 5:12-160.j. The Act authorizes the CRDA to acquire property and then to lease it as a method of financing an eligible project. N.J.S.A. 5:12-161.d. Extending the ownership doctrine to the lease in this case fulfills the intent of the Legislature in creating the CRDA *352 with authority to finance projects. One of the CRDA’s functions is to generate revenue for the City by encouraging investment in, and addressing the pressing needs of, Atlantic City. Local property taxes are the primary source of revenue for Atlantic City. Each parcel of land in the city must bear its fair share of the tax burden. Allowing the rental of properties by the CRDA to shield tenants from local property taxes contravenes the very essence of the Act.
Further evidence of the lease as a financing tool can be found in the provision relating to the option to purchase after twenty years. Section 26.02 of the lease deals with the purchase price for the exercise of the option. This section, in fixing the purchase price, refers, among other things, to “Land Acquisition Costs, Relocation Assistance Costs and Site Preparation Costs.”
Our courts extend “fee ownership” to a tenant who has leased property depending on the permanence evidenced by the lease agreement and the purpose for which the decision must be made. Whether a ninety-nine-year lease equals ownership depends on the facts, circumstances, and legislative intent in each ease.
In the present case, the City asks me to extend the doctrine of ownership to Renaissance, a tenant under a ninety-nine-year lease with the option to purchase the property after the expiration of the first twenty years of the lease, for purposes of local property taxation. Renaissance asks me to find that the ninety-nine-year lease has no effect on the CRDA’s ownership of the property in order to allow the lessee to benefit from the CRDA’s statutory tax exemption under N.J.S.A. 5:12-167. The City’s position is correct. The subject property is not the “property of’ the CRDA as the Legislature contemplated. The ninety-nine-year lease with an option to purchase the property is a financing mechanism used by the CRDA to encourage investment in Atlantic City in accordance with the Act.
The determination that the land is owned by plaintiff for local property tax purposes concludes the exemption issue adversely to *353 the plaintiff. Based on ownership, the property is not exempt from local property taxation.
II.
If the land involved in this matter is considered to be owned by the CRDA, its exemption from local property taxation based on use by a tenant that is a private entity should be considered. Both parties have dealt extensively with this issue, and I will deal with it also even though I have concluded that, for local property tax purposes, the land is owned by Renaissance and is not exempt. As our Supreme Court has observed, “there is no constitutional mandate that a court may not go beyond what is necessary to decide a case at hand.” Busik v. Levine, 63 N.J. 351, 363, 307 A.2d 571, appeal dismissed, 414 U.S. 1106, 94 S.Ct. 831, 38 L.Ed.2d 733 (1973). The court also said:
the Court may ... itself raise an issue it thinks should be resolved in the public interest, or may deliberately decide issues which need not be decided when it believes that course is warranted. So a court may decide an issue even though the litigation has become moot, again in the public interest.
[ Id. at 363-64, 307 A.2d 571. (citations omitted) ]
Renaissance argues that its operation of a retail shopping mall anchored by a supermarket fulfills a public purpose and that the land should therefore be exempt from taxation. It bases this argument on the CRDA’s identification of the project as “a project which would address the ‘pressing social and economic needs’ of the people of Atlantic City.” In support of this position, Renaissance cites eases relating to the New Jersey Highway Authority and relies on N.J.S.A. 54:4-1.10, 4-2.8 and 4-3.3 as well as N.J.S.A. 5:12-167. The City argues that Renaissance is a private entity operating a retail shopping center for private purposes and should not be exempt from taxation. Thus, if CRDA owns the property, it must be determined if Renaissance, as a tenant, is fulfilling a public purpose.
In framing the “use” issue in this manner, Renaissance is conceding, as it must, that, under N.J.SA. 5:12-167, the CRDA’s ownership, alone, is not enough to qualify the subject property for tax exemption. In addition to ownership by a public entity, there *354 must also be public use of the property. This is clearly the law. In N.J. Turnpike Auth. v. Washington Tp., 16 N.J. 38, 106 A.2d 4 (1954), the Supreme Court held that, in order for property to be exempt from- local property taxation, there must be public use as well as public ownership, and public ownership without public use is not enough to qualify property for local property tax exemption. A public use is imperative, even if the property is that of the CRDA, if the property is to be exempt from local property taxation.
Turning to the three provisions in Title 54 to which Renaissance refers, in 1949 the Legislature adopted L. 1949, c. 177, § 1, entitled “Exempt property leased to a person whose property is not exempt.” N.J.S.A. 54:4-2.3. The statute states:
When real estate exempt from taxation is leased to another whose property is not exempt, and the leasing of which does not make the real estate taxable, the leasehold estate and the appurtenances shall be listed as the property of the lessee thereof, or his assignee, and assessed as real estate.

[Ibid.]

The Legislature supplemented this statute by adopting N.J.S.A. 54:4-1.10 in order to “close a loophole____eliminating the artificial distinction between leased property and property used under a non-lease arrangement.” N.J. Highway Auth. v. Bloomfield, 8 N.J.Tax 637, 642 (Tax 1987). These statutes insure that tax exemptions do not automatically benefit the tenant simply by virtue of the fact that the record owner may be exempt from property taxes. An agency may own property and lease it to a private individual without automatic loss of the exempt status of the property if the lessee has an independent basis for exemption. Renaissance asserts that the subject property is used for a public purpose pursuant to N.J.S.A. 54:4-3.3 which states:
the property of the State of New Jersey; and the property of the respective counties, school districts and taxing districts used for public purposes . . if not used for a private purpose, shall be exempt from taxation under this chapter.
Renaissance cites Egg Harbor City v. Atlantic County, 10 N.J.Tax 7 (Tax 1988), as support for its contention that it is a private entity fulfilling a public purpose. In that case, county-owned property leased to the New Jersey Department of Corree *355 tions and operated by a private entity as a juvenile detention facility was assessed by the municipality in which the property was located. The municipality argued that the portion of the property operated by the private entity was subject to local property tax pursuant to N.J.S.A. 54:4-1.10. The Department of Corrections argued that the property was used for a public purpose pursuant to N.J.S.A. 54:4-3.3 and was exempt from local property taxation. The court set forth four different situations involving the use of publicly owned property:
(1) the publicly owned property is used by a governmental or public entity for public purposes; (2) the publicly owned property is used by a private entity to accomplish a public purpose; (3) the publicly owned property is used for private purposes; and (4) .. publicly owned property is used by the government agency for a public purpose, but the government agency employs a private company to accomplish the purpose for it.
[Id. at 23.]
The court held that the private entity operated the facility at the direction of the public entity specifically to carry out the public entity’s purpose, namely the operation of a juvenile detention facility. Thus, the property was exempt from local property taxation.
The case of Egg Harbor City v. Atlantic County, supra, does not support Renaissance’s position. On the contrary, the property in Egg Harbor City was exempt as a juvenile detention facility. The provision of such a facility is clearly a county function. There is, however, nothing in the Act which authorizes the CRDA to operate a shopping mall or a supermarket.
Renaissance argues that its retail shopping center anchored by a supermarket satisfies the public purpose requirement because the CRDA adopted a resolution providing for subsidies and loans to a private developer to build a commercial facility. The project contains a bank, supermarket, hair studio, clothing stores, and fast food restaurants. Although the CRDA determined that this project was entitled to financial assistance, it does not follow that the property is exempt from local property taxation. In adopting its resolution, the CRDA determined that the project was “in furtherance of the public purposes of the Authority” under the Act in that it “constitutes a plan and project which directly serves the press *356 ing social and economic needs of the City.” However, the CRDA’s determination that the project was eligible for funding does not indicate that the project serves a public purpose for tax exemption purposes under N.J.S.A. 54:4-3.3. The CRDA’s determination was made in order to permit access to CRDA funds to help finance the project, not to provide for tax exemption under N.J.S.A 54:4-3.3.
The Supreme Court determined in Presbyterian Homes v. Division of Tax Appeals, 55 N.J. 275, 261 A.2d 143 (1970), that a “charitable purpose” exists if the government would have to provide the service for its citizens if the private entity did not provide it. In that case, the Supreme Court, in upholding the denial of tax exempt status under N.J.S.A 54:4-3.6 to the owner/operator of a retirement community, stated:
the determination of whether property is devoted to charitable purposes depends upon the facts or circumstances of each ease. As a guide, however, it should be borne in mind that a sometimes stated justification for charitable tax exemptions is that if the charitable work were not being done by a private party, it would have to be undertaken at public expense.
[Id. at 285, 261 A.2d 143.]
The principle applies in the public purpose context. The CRDA would not have to provide a shopping mall and a supermarket in downtown Atlantic City. Indeed, the CRDA has neither the obligation nor the authority to operate commercial facilities. Renaissance does not operate this retail shopping center for a public purpose in light of the Supreme Court’s ruling in Presbyterian Homes.
Renaissance erroneously compares CRDA legislation with “redevelopment statutes” in describing them as “the broadest types of exemptions.” The only example given of “redevelopment statutes” is N.J.S.A. 40A:12A-36, a provision of the Local Redevelopment and Housing Act, N.J.S.A. 40A:12A-1 to -49. Renaissance fails to recognize the significant differences between the Act and the legislation dealing with redevelopment and land acquisition and use for that purpose. The Local Redevelopment and Housing Act gives municipalities a broad range of options in redeveloping areas considered blighted within their boundaries. For example, *357 the Local Redevelopment and Housing Act refers to a “Housing authority,” a “Housing project,” and “Public housing.” N.J.S.A. 40A:12A-3. It contemplates that a municipality may directly carry out the responsibility for redevelopment projects. N.J.S.A. 40A:12A-4.c. It also provides that a municipality or a redevelopment entity designated by a municipality may undertake redevelopment projects, install or construct streets and utilities and arrange for the preparation of plans by registered architects, among other things. N.J.S.A. 40A:12A-8.
Accordingly, redevelopment property becomes the State’s property by virtue of the various undertakings of a municipality. The CRDA’s reinvestment property is held while financing or investment is arranged for a particular project. Once the project is complete, the property is that of the investors. Thus, the CRDA’s unique function as a financial catalyst for eligible projects in Atlantic City can not be equated to other redevelopment. There is no authority in the Act for the CRDA to act as a developer or an operator.
A review of N.J.S.A. 5:12-161, listing the powers of the CRDA, indicates that the CRDA is a financing and investment agency, not a developing agency. The CRDA’s purpose is “to encourage investment in, or financing of, ... project[s].” N.J.S.A. 5:12-160.j. The nature of the CRDA’s activities was discussed in In the Matter of Appeal of Adoption, of Rules Regarding Property Disposition of a, Casino Licensee (N.J.A.C.19:41-7.2(A)), 224 N.J.Super. 316, 540 A.2d 523 (App.Div.1988). In that case, the Appellate Division said:
The general purpose of the Authority is to manage the proceeds received under N.J.S.A. 5:12-144.1 and 5:12-162 and to direct the rehabilitation of blighted areas of Atlantic City. N.J.S.A. 5.12-160 and 5:12-161. The Authority has no dominion over the independent investments by casinos. Their basic concern is the funds, which the casinos are required to pay, earmarked for the redevelopment of Atlantic City. Initial estimates suggest that the Authority will supervise $1.4 billion of mandated casino investments over a 25-year period. Almost half of that sum is designated for the Atlantic City area. The Authority has already approved $138 million in project monies for 1,064 housing units at five Atlantic City locations.
[Id. at 323, 540 A.2d 523.]
*358 The case emphasizes the investment nature of the CRDA. The CRDA has “no dominion over” projects in the sense of control, development, operation or use of the project, except, of course, to see that the investments it encourages comply with the requirements of the Act. It is instructive to note that In Re ... Casino Licensee is the only case annotated under N.J.S.A. 5:12-153 to 5:12-183.
Public use by the CRDA for purposes óf exemption from local property taxation is limited. Land owned by the CRDA on which, for example, it would build an office building for its own use would be exempt. Land purchased by the CRDA or taken by the CRDA through condemnation proceedings and held by the CRDA for a specific development until title is transferred, or the land is leased, to a developer/operator, would be exempt. The public purpose of the CRDA is accomplished once the project is operational.
Renaissance’s argument that the CRDA is equivalent to the New Jersey Highway Authority (“NJHA”) is similarly misplaced. The NJHA, whose property is exempt from local property taxation, leases property to private entities which, in turn, provide services to users of NJHA property. Properties upon which rest-stops are operated are exempt from taxation as fulfilling a public purpose. The NJHA is empowered to operate such facilities because the Legislature intended highways to be self-contained. The NJHA provides these facilities so that travelers do not have to exit highways in order to rdfuel or to use a service ai-ea. See Walter Reade, Inc. v. Dennis Tp., 36 N.J. 435, 177 A.2d 752 (1962); In re Appeal of Howard D. Johnson Co., 36 N.J. 443, 177 A.2d 756 (1962); and New Jersey Highway Auth. v. Bloomfield, 8 N.J.Tax 637 (Tax 1987) (restaurant facilities for motorists on limited access toll roads). The public purpose exemption granted to restaurants on certain highways results from the fact that those restaurants serve a public pur-pose. The restaurants are ancillary to the highway which obviously has a public purpose. They permit the full use and enjoyment of the highways. The NJHA provides services to motorists on New Jersey’s highways, one of which is operating service stations. The NJHA has a continuing relation *359 ship to the land it leases. Its operation of a highway is side-by-side with the operation of the restaurants, requiring the exercise of certain dominion, control, and supervision of the leased premises.
In the present case, however, an entire block of city land is under the dominion and control of Renaissance, and, except for its rights under the lease, which for purposes of the use issue is a financing device, the CRDA has no proprietary interest in the property constituting use by the CRDA. The NJHA cases are inapplicable to the present case. Cf., Martin v. Collingswood, 36 N.J. 447, 177 A.2d 759 (1962)(refreshment facility in a county park); Bergen County v. Leonia Borough, 14 N.J.Tax 142 (Tax 1994)(horse riding facility in a county park).
New Jersey Hous. & Mtge. Fin. Agency v. Moses, 215 N.J.Super. 818, 521 A.2d 1307 (App.Div.1987), does not support plaintiffs contention that the subject facility is public property being used for public purposes. In that case, the court found that the Housing and Mortgage Finance Agency had authority to institute condemnation proceedings for construction of a shopping center to serve residents of nearby publicly-financed housing projects. Contrary to plaintiffs contention, this case does not stand for the proposition that, once constructed, the subject shopping center is exempt from taxation because it serves a “public purpose” as construed for real property taxation purposes.
In Jamouneau v. Division of Tax Appeals, 2 N.J. 325, 66 A.2d 534 (1949), a private party entered into a fifty-year agreement with Newark by which it leased tax exempt land and constructed a factory at its own cost. Upon construction, the factory was to become the property of the City. The Court determined that neither the land nor improvements were entitled to an exemption from taxation. The Court stated that “[t]he use was exclusively private and commercial; there was neither vestige of a present public use nor prospect of a future public use within the terms of the lease,” Id at 380, 66 A.2d 534, and “the receipt of rentals from a private lessee does not transform a private use into a public use.” Id. at 333, 66 A.2d 534.
*360 The CRDA was not created to provide commercial sendees but only to encourage investment and financing of projects necessary and essential to the social and economic needs of the residents. It is a reinvestment authority. Both the Act and the CRDA seek rehabilitation of the economy of Atlantic City. The CRDA funds are to be made available for major capital investments in Atlantic City to improve the lives of the residents of Atlantic City.
In this ease, having legal title in the CRDA, subject to a ninety-nine-year lease, is a method for spreading the cost of the land to the user over a long period of time. Allowing the property in this matter to be exempt from taxation would be to impose on all of the other property owners in the City a greater tax burden, directly contrary to the purpose of the Act. Exempting the land from local property taxation in this case would have the anomalous result of assisting the residents of Atlantic City by the CRDA’s investment and financing powers, while at the same time burdening them by diminishing the'City’s tax base. This could not have been the intention of the Legislature.
In this regard, Chief Justice Vanderbilt succinctly focused on the problem in N.J. Turnpike Auth. v. Washington Tp., 16 N.J. 38, 106 A.2d 4 (1954). In writing for the Court in a case in which exemption was denied to NJHA property not used for highway purposes, he said:
[t]he permanent talcing of private property can be justified only if in the public interest and for the purposes specified in the enabling act. Were the rule otherwise, in these days of expanding governmental activities the amount of property remaining in private hands would be uselessly diminished, adversely affecting the taxing power of the State, which necessarily depends in large measure on the amount of private property available for taxation.
The taxing power lies at the heart of government. Without taxes government could not function. Any impairment of the taxing power affects the lifeblood of government. Accordingly claims for tax exemption have to stand scrutiny to show that they serve a public purpose____
{Id. at 43-44,106 A.2d 4. (citation omitted) ]
Exemption from local property taxation of the land in this case would also result in developers’ demanding that the CRDA lease *361 land to them instead of transferring to üiem the title to the land, further reducing the local property tax base.
The CRDA was intended to be a conduit by which investors could obtain land and capital. Land could be obtained through the use of eminent domain. Capital could be obtained through the use of bond issues. Here, while the CRDA determined that the project was entitled to financial assistance, the fact is that the facility is purely a commercial enterprise. Plaintiff developed the property and leased it to various commercial subtenants who pay rent. The property is no more devoted to a public use than are new casino hotel rooms funded by the CRDA. The CRDA’s assistance should not be construed to grant plaintiff a tax exemption.
Renaissance operates the retail shopping center as a private entity for private purposes. The CRDA’s participation in the project is simply as an economic catalyst in order to encourage reinvestment in Atlantic City in a manner compatible with the needs of the residents. Renaissance does not operate the subject property for a public purpose as contemplated by N.J.S.A. 54:4-3.3 and, thus, the property is not exempt from local property taxation.
Ill
At the time of the hearing on the motions on the exemption issue, counsel for Atlantic City raised two issues not dealt with in any of the briefs. First, he argued that Renaissance does not have standing to claim an exemption on behalf of the CRDA pursuant to N.J.S.A. 5:12-167. Second, he claimed that the City’s cross-motion for partial summary judgment should be granted because Renaissance failed to file an application for tax exemption with the tax assessor for 1996. The issues were not dealt with at the hearing, and I gave both parties permission to submit briefs on these issues. The parties have done so.
*362 The lease specifically permits Renaissance to contest the “amount or validity” of any assessment through the tax appeal process. See Lease Agreement, Section 7.04, “Contesting Tax.”
In Village Supermarkets, Inc. v. West Orange Tp., 106 N.J. 628, 525 A.2d 323 (1987), the Supreme Court held that a tenant could, prosecute an appeal in the name of the landlord with sufficient notice to the landlord. The Court stated that “[i]n the context of a long-term lease, the landlord has almost no interest in the assessment.” Id. at 632-33, 525 A.2d 323. See also R. 8:5-3(a)(8). On the face of the documents,' Renaissance is a long-term tenant prosecuting an appeal pursuant to authority granted under the lease.
Sufficient notice was provided to the CRDA of Renaissance’s determination to file this appeal. Counsel for the CRDA submitted to me a letter stating that the CRDA is permitting Renaissance to exercise its rights in accordance with the lease which provides .that Renaissance has the right to prosecute tax appeals. The CRDA does not, however, take any position on the exemption issue. Thus, Renaissance has standing to bring this tax appeal.
The City also argues that Renaissance should be denied the right to claim an exemption for tax year 1996 because it did not file an initial statement for exemption pursuant to N.J.S.A. 54:4-4.4 until November 27, 1996. The City claims that Renaissance would have had to file the initial, statement no later than November!, 1995.
For tax year 1996, the City classified the subject property as exempt. It was not until late October 19’96 that the City imposed an added assessment for the second half of 1996. The City sent the tax bill imposing the added assessment to the CRDA. On October 30, 1996, the CRDA sent the tax bill to Renaissance. In this case, the City was carrying the subject property on its tax rolls as exempt, an action taken by the City on its own initiative. However, following the revocation of the exemption, Renaissance *363 filed an initial statement of tax exemption with the tax assessor on or about November 27, 1996 for the tax year 1997.
15, 6] No initial statement was filed for 1996, the year under review. Since the property was originally exempt for 1996 and the added assessment was not imposed until late October 1996, the failure of Renaissance to file the initial statement of tax exemption with the tax assessor is not a bar to the prosecution of this appeal. N.J.S.A. 54:4-4.4 is not an absolute prerequisite to a party’s right to a tax exemption. Blair Academy v. Blairstown, 95 N.J.Super. 583, 232 A.2d 178 (App.Div.), certif. denied, 50 N.J. 293, 234 A.2d 401 (1967) held that the failure of the municipal tax assessor to obtain an initial statement is not a bar to a non-profit organization’s tax exemption to which it was entitled. In Blair Academy, the tax assessor was fully aware of the tax exempt status of the academy, and the municipality had recognized the tax exempt status of the academy for a number of years prior to the tax year in question. The Appellate Division held that, given the fact that the municipality had previously recognized the tax exemption, the failure of the municipal assessor to obtain the statement was not a bar to a claim for tax exemption.
Emanuel Missionary Baptist Church v. Newark, 1 N.J.Tax 264 (Tax 1980), held that the failure of a church to file an initial statement of exemption was not fatal to a claim of exemption when the transfer of exempt property occurred after the deadline for filing the statement under N.J.S.A. 54:4-4.4. The Tax Court concluded that “N.J.S.A. 54:4-4.4 merely provides for the monitoring and verification of exemption claims by the assessor, with the triennial statement serving as the basic audit document.” Id. at 268. The court also concluded that a strict construction of N.J.S.A. 54:4-4.4 would defeat the evident legislative intent of N.J.S.A. 54:4-3.6, the statute which provides for exemptions for certain non-profit organizations.
In Atlantic County New Sch. Inc. v. Pleasantville, 2 N.J.Tax 192 (Tax 1981), the Tax Court stated:
*364 Even the failure to file on November 1 may not vitiate the exemption. As pointed out in Emanuel, the filing under N.J.S.A . 54:4-4.4 is not a condition precedent to the' allowance of an exemption under N.J.S.A 54:4-3.6.
[Id. at 196-97. (citation omitted) ]
There is no dispute that the City recognized the property as exempt for 1996 until late 1996 when the City imposed an added assessment for six months of 1996. There is also no dispute that Renaissance did not learn of the added assessment until the end of October 1996. Accordingly, N.J.S.A 54:4-4.4 does not bar Renaissance from presenting a claim for a tax exemption for tax year 1996.
IV
Plaintiffs motion for partial summary judgment is denied. Defendant’s motion for partial summary judgment is granted. Counsel for defendant will prepare and submit an order under R. 4:42-1(c) providing that the subject property is not exempt from local property taxation. The matter will.be scheduled for trial on the issues of valuation and discrimination.

 The Appellate Division decision indicated that the court had consolidated two matters in arriving at its decision. Mills v. East Windsor Tp., 176 N.J.Super. 271, 1 N.J.Tax 178, 422 A.2d 819 (Tax 1980) was consistent with the determination in MacMillan v. Taxation, Div. Director, an unpublished opinion.